# Mobile, Jackson & Kansas City R. R. Co. *v.* Bromberg, Admr. &c.

*Action against Railway Company by Administrator for Alleged Negligent Killing of Employee.*

1. *Appeal; effect of general assignment of error.*—Where in assigning errors upon the rulings of the trial court in overruling demurrers to each of several counts of a complaint, the assignment of error is not separately based upon such rulings severally, but upon them as a whole, unless there was error in overruling the demurrer to each and every count of the complaint, the assignment of error is bad and unavailing on appeal.

[Mobile, Jackson & Kansas City R. R. Co. v. Bromberg, Admr. &c.]

2. *Same; same.*—Where in assigning errors upon rulings of the court in sustaining demurrers to several pleas, the assignment of error is not based upon these rulings severally, but upon them as a whole, if any of the grounds of the demurrer to either of the pleas was properly sustained, the ruling of the court in sustaining the demurrer will be upheld.

3. *Negligence of railroad company in failing to use automatic couplers as provided by Act of Congress; sufficiency of complaint.*—In an action against a railroad company by an administrator to recover damages for the alleged negligent killing of plaintiff's intestate, who was in the employment of the department as a brakeman, and was killed while in the act of coupling two cars together in the discharge of his duties, where the alleged negligence consisted in a failure on the part of the defendant to comply with the provisions and requirements of the Act of Congress approved March 2, 1893, requiring railroads to equip their cars used in interstate commerce, with automatic couplers (27 U. S. Stat. at large, p. 531), it is not necessary to allege in the complaint that at the moment of the injury, the cars were actually moving freight or passengers in the transportation of interstate commerce; and a count of the complaint which alleges that the plaintiff's intestate was killed by being crushed between two cars while trying to couple them "which were being made up in a train of the defendant for interstate commerce," sufficiently shows that the cars were used for interstate commerce, so as to bring them within the provisions of the act of Congress.

4. *Contributory negligence; insufficiency of plea.*—In an action to recover damages for the alleged negligent killing of plaintiff's intestate, a plea which avers that "the negligence of the plaintiff's intestate proximately contributed to said injuries as alleged in said counts," is insufficient as a plea of contributory negligence, and subject to demurrer.

5. *Contributory negligence; duty of employee to adopt the less dangerous way of performing an act.*—In the discharge of his duty, an employee is required to use ordinary care and prudence to avoid injury, and when there are two ways of discharging his duty, he must select that way which is safer, or less dangerous, provided he can perform his duties as well and efficiently in one way as in the other.

6. *Action for negligence; sufficiency of replication to plea.*—In an action against a railroad company by an administrator to recover damages for the alleged negligent killing of his intestate, who was at the time of his injuries in the defendant's

employment and engaged in trying to couple two cars in the discharge of his duty as brakeman, where the defendant by several pleas sets up as a defense, that there were other and different ways attended with less danger in which the coupling might have been made by the plaintiff's intestate without going in between the cars, as he attempted to do, and that he was guilty of negligence which contributed to his injury in going in between the cars, instead of adopting one of the other means suggested in the pleas, a replication of the plaintiff to said special pleas, which avers that the plaintiff's intestate could not have performed his duty as a brakeman in making said coupling in the manner indicated in said plea as well and as effectively as he could have performed it by going in between the cars, as he attempted to do, is a sufficient response to the averments of the pleas, and is not subject to demurrer.

7. *Action against railroad company to recover damages for negligent killing of employee; Safety Appliance Act of Congress.* An action can be maintained by an administrator against a railroad company in this State to recover damages for the alleged negligent killing of plaintiff's intestate, who was in the employ of the defendant as a brakeman, and was killed while in the act of coupling two cars in the discharge of his duties (Code §27), where the negligence consisted in a failure on the part of the defendant company to comply with the provisions and requirements of the Safety Appliance Act of Congress, which requires railroad companies to equip cars used in interstate commerce with automatic couplers (27 U. S. Stat. at large, 531).

8. *Same; same.*—In such a case recovery can be had under section 27 of the Code of 1896, against an employer for the death of an employee, which is shown to have resulted by reason of the failure of the employer to comply with the requirements of said Act of Congress.

9. *Action for killing employee by failure to comply with Act of Congress; assumption of risk no defence.*—In an action against a railroad company to recover damages for the alleged negligent killing of plaintiff's intestate, who was in the defendant's employment as a brakeman at the time he was killed, and was attempting to couple cars in the discharge of his duty, where the negligence complained of consisted of a failure on the part of the defendant to comply with the provisions and requirements of the Safety Appliance Act of Congress (27 U. S. Stat. at large, p. 531), pleas setting up as a defense to such action that the plaintiff's intestate assumed the risk incident to his

[Mobile, Jackson & Kansas City R. R. Co. v. Bromberg, Admr. &c.]

employment presents no defense, and should be stricken on motion.

10. *Same; sufficiency of complaint.*—In such an action, it is not necessary in order to state a cause of action, that the complaint should aver in detail the *quo modo* by which the failure of the defendant to equip his cars, as required by the Act of Congress, resulted in the death of plaintiff's intestate.

11. *Action for negligent killing of employee; admissibility of evidence.*—In an action against a railroad company to recover damages for the alleged negligent killing of plaintiff's intestate, who was in the defendant's employment as a brakeman, and at the time he was killed, had gone between two cars for the purpose of coupling them together in the discharge of his duties, where the evidence showed that the coupling was made on a sharp curve in the defendant's track, and that the plaintiff's intestate went between the cars on the inside of the curve, and the contention of the defendant was that there was not space enough on the inside curve between the cars when the cars came together for a person to attempt to make the coupling without being crushed, and there was testimony introduced on the part of the defendant tending to support this contention, it is competent for the plaintiff to prove that a coupling was made by another employee between two cars of the same train from the inside curve just before the accident to the plaintiff's intestate.

12. *Pleading and practice; when motion to exclude all evidence on the part of plaintiff properly overruled.*—On the trial of a civil case, where there is evidence introduced on the part of plaintiff tending to support the averments of each count of the complaint, a motion by the defendant to exclude all the evidence offered in behalf of the plaintiff on the ground that no *prima facie* case had been made by such evidence, is properly overruled.

13. *Action for negligence; contributory negligence; charges in reference thereto.*—In an action to recover damages for the alleged negligent killing of plaintiff's intestate, where the defense introduced is contributory negligence, if the testimony introduced by the plaintiff establishes the pleas of contributory negligence, it is not proper for the defendant to move to dismiss the evidence offered upon behalf of the plaintiff on such ground, but the fact of the contributory negligence being shown should be taken advantage of by the defendant by requesting the court in writing to give the general affirmative charge for the defendant.

[Mobile, Jackson & Kansas City R. R. Co. v. Bromberg, Admr. &c.]

14. *Pleading and practice; appeal; charge of court to jury.*—On an appeal the assigning as error by the appellant of the giving or refusal of several written charges in one general assignment, will not avail to put the trial court in error, unless each of the given charges was erroneous, or everyone of the refused charges were correct.

15. *Complaint containing several separate counts; charge in reference thereto.*—In an action to recover damages for negligence, where the complaint contains eight separate counts, a charge asserts a correct proposition of law, and should be given at the request of the plaintiff which instructs the jury that each one of the eight counts of the complaint is in the nature of a separate suit; "and if the plaintiff has proven any one of his counts, he is entitled to recover unless the defendant has established some defense pleaded thereto."

16. *Burden of proving contributory negligence; charge in reference thereto.*—In an action to recover damages for negligence on the part of the plaintiff, the burden of proving the plea of contributory negligence is upon the defendant; and the charge which instructs the jury is free from error.

17. *Pleading and practice; argument of counsel to jury.*—In an action against a railroad company to recover damages for the alleged negligent killing of plaintiff's intestate, the statement of the plaintiff's attorney in his argument to the jury that "You should give a large verdict in this case as punishment, because if you give a small verdict, the defendant can appeal and delay the case; but if a large verdict was given, it would be afraid of an affirmance, and would come forward with a proposition of settlement," while not to be commended, it is not such an argument as would work a reversal of the cause for the refusal of the trial court to exclude such argument.

18. *Judicial knowledge; Acts of Congress.*—Court takes judicial knowledge of acts of Congress, and therefore it is immaterial whether or not an act of Congress is introduced in evidence in the trial of a case.

APPEAL from the Circuit Court of Mobile.

Tried before the Hon. WM. S. ANDERSON.

This suit was instituted by the appellee in the Circuit Court of Mobile County to recover damages for the alleged negligence of the defendant, causing the death of his intestate, Arthur Robbins on the 19th day of December, 1900. Plaintiff's intestate was employed as a brakeman by the defendant and on the morning of the

accident undertook to couple two cars of the defendant, one a caboose equipped with a link and pin coupler and the other a passenger coach equipped with what is known as a "Miller hook" coupler. The cars did not couple automatically.

The coupling was attempted to be made on a very sharp curve, in one of the tracks of the defendant company in its yard at its terminus in the City of Mobile. Plaintiff's intestate went in between the ends of the two cars and took a position on the inside of the curve, and called to another brakeman of defendant, who was standing some distance from the train on the inside of the curve, to give the signal to the engineer to back the train up in order that he might make the coupling. When the train moved down to the car to which the coupling was to be made, deceased was caught between the corners of the two cars, on the inside of the curve, and after the cars were separated by the concussion walked from between them and laid down on an embankment near the track where he died immediately.

The substance of the averments of the first seven counts of the complaint as amended is sufficiently shown in the opinion. The 8th count of the complaint was in words and figures as follows: (8.) "The plaintiff, Clara Miller, as the administratrix of the estate of Arthur Robbins, deceased, under appointment of the Probate Court of Mobile County, Alabama, sues the defendant, the above named, Mobile, Jackson & Kansas City Railroad Company, a corporation, and claims of it the sum of fifty thousand dollars, as damages for that heretofore, to-wit, prior to, and at the time of the matters and things herein complained of, the said defendant was in the possession and control of, and was operating, a railroad engaged in interstate commerce, and running its trains on its line of railroad from a point in Mobile county, Alabama, in or near the City of Mobile, Ala., to Merrill, a place in the State of Mississippi, and engaged in carrying passengers and freight between various points in the State of Alabama and various points in the State of Mississippi; and the plaintiff avers that on the 19th day of December, 1900, the defendant was required by law, and it was the duty of said

defendant, to have equipped its cars used in moving interstate traffic on its lines with couplers which would couple automatically by impact; and the plaintiff avers that the defendant neglected to perform its said duty, and by reason of such negligence mashed to death the plaintiff's intestate, Arthur Robbins, who was then and there in the employ of the defendant while engaged in the performance of his duty in making a coupling in Mobile County, Alabama, on the said 19th day of December, 1900, to the great damage of the plaintiff, wherefore she sues."

The 8th count of the complaint was demurred to upon the following grounds:

1st. Said count fails to allege that plaintiff's intestate was mashed or jammed by the cars of defendant which were not equipped with automatic couplers as required by law.

2nd. Said count fails to allege any fact showing the relation between the failure of the defendant to equip its cars with automatic couplers as required by law and the death of plaintiff's intestate.

3d. Said count fails to allege any fact showing that the character of employment in which plaintiff's intestate was engaged with defendant was such as to impose upon defendant the duty to plaintiff's intestate to equip its cars with automatic couplers.

4th. Said count fails to allege any fact showing that the coupling alleged to have been attempted by plaintiff's intestate was the coupling of cars required by law to be equipped with automatic couplers. This demurrer was overruled.

The defendant pleaded the general issue and several special pleas, setting out his defense that the plaintiff assumed the risk or danger incident to his making the coupling, and therefore that he was killed by negligence which proximately contributed to his injury. Among the special pleas of the defendant interposed to the first six counts of the complaint, was the following: "3d. defendant further says, that in the track of its said railroad at the point where plaintiff's intestate undertook to couple said coach and said caboose together, there was

[Mobile, Jackson & Kansas City R. R. Co. v. Bromberg, Admr. &c.]

a sharp curve, and that plaintiff's intestate negligently took a position between said coach and said caboose on the inside of said curve, where the cars would come together in the event the drawbars of said cars slipped by each other; and defendant alleges that plaintiff's intestate could with safety have taken a position between said car on the outside of said curve, where in the event said drawbars slipped by each other, there would have been ample room between the ends of said cars on the outside of said curve for plaintiff's intestate to have stood without danger. Defendant alleges that the danger due to standing between said cars on inside of said curve was obvious; and defendant alleges that the said negligence of plaintiff's intestate proximately contributed to his alleged injuries." To this third plea, the plaintiff demurred upon the following grounds: 1st. Said plea raises no issue or issues which are not raised by the defendant's first and second plea; in this said plea attempts to set up contributory negligence of plaintiff's intestate, and which defense of contributory negligence is fully raised by the second plea or pleas, and the defendant can under said plea avail itself of every legal defense of contributory negligence available to the defendant in this cause. 2nd. Because said plea does not allege that to go in between the cars on the outside of said curve was a proper way to go about making said coupling. 3rd. Because said plea fails to show that going between the ends of the cars on the inside of the curve was not a proper way of making said coupling. This demurrer was sustained. The other pleadings and rulings thereon are sufficiently stated in the opinion.

The bill of exceptions contains the following recitals in reference to a part of the argument made by plaintiff's attorney before the jury: "Plaintiff's counsel in making the opening argument to the jury among other things said: "Gentlemen of the jury, you should give a large verdict in this case as punishment, because if you give a small verdict, defendant could appeal and delay the case, but if a large verdict was given it would be afraid of an affirmance and would come forward with a proposition of settlement." Defendant moved the court

to stop counsel and exclude such argument; the court refused the motion and the defendant then and there excepted."

Under the opinion on the present appeal, it is not necessary to set out at length the many charges to the jury requested by the plaintiff, and the defendant.  There were verdict and judgment in favor of the plaintiff, assessing his damages at $4500.  The defendant appeals and assigns as error the several rulings of the trial court to which exceptions were reserved.

McINTOSH & RICH, for appellant.—The Act of Congress is intended only to effect interstate carriers and applies only to cars used in interstate commerce.  The counts of the amended complaint fail to specifically allege that the cars complained of were used in moving interstate traffic.  The counts of the complaint in question fail to allege that the caboose was used in moving interstate traffic at the time of the injury or at any time.— Vol. 2 Supt. § Rev. Stat. U. S. p. 102.

All of the counts of the amended complaint charge the appellant with only one act of negligence, that is, the failure to equip the two cars in question with couplers that would couple automatically.  The suit is instituted under Section 27 of the Code of 1896.  This Act is highly penal in its nature and authorizes the severest punishment to be inflicted upon persons and corporations guilty of negligence resulting in the death of others.  We earnestly insist that damages can not be assessed against appellant under its highly penal terms for any act merely because it is prohibited by Act of Congress and is not an act of negligence in and of itself.  The record shows, without dispute, that the coupling equipment of both the cars complained of was in perfect condition and that they were perfect couplers of their kind; the record also shows without dispute that the intestate of appellee used the appliances without objection and with full knowledge of the fact that they would not couple automatically.—L. & N. R. R. Co. v. Stutts, 105 Ala. 368; Roland v. L. & N. R. R. Co., 96 Ala. 630.

Both the 8th and 9th pleas allege facts showing that the deceased had assumed the risk of using the couplers

with which the two cars in question were equipped.
The ground upon which the Circuit Court sustained the
motion to strike said plea was, that the 8th Section of
the act of Congress (2 Vol., Supt. Rev. Stat. U. S., p.
103) provides, that any employe who *"may be injured"*
because of a failure to equip the cars with automatic
couplers "shall not be deemed thereby to have assumed
the risk" although continuing in the employment after
knowledge, etc. It is settled beyond controversy that
to all actions brought charging negligence, in this state,
the defendant may plead and prove that the deceased
assumed the risk of the employment.—*Sloss Iron & Steel
Co. v. Knowles,* 129 Ala. 415; *Birmingham Ry. & Elec.
Co. v. Allen,* 99 Ala. 370; *L. & N. R. R. Co. v. Stutts,* 106
Ala. 368. The appellee relies entirely upon the Ala-
bama statute for his right to maintain the action; he
can not claim under and against its provisions. If he
avail of his right to institute the action he must accept
the limitations imposed upon it by the terms of the stat-
ute or by the construction given it by the Supreme
Court of Alabama. The Supreme Court of Alabama
has construed it to mean, that defendants prosecuted
under its terms have the right to plead the assumption
of the risk on the part of the deceased. The court in
sustaining the motion to strike the pleas of the defend-
ant setting up this defense clearly deprived it of its
legal right.—*King v. Henkie,* 80 Ala. 509. The legal
consequence of a person's acts are determined by the
law obtaining when and where the acts are performed.
—*L. & N. R. R. Co. v. Williams,* 113 Ala. 404. To hold
that the act of congress in question could take away from
the defendant, prosecuted under an Alabama statute, a
defense which the defendant had previously enjoyed un-
der the provisions of the local law, would give to Con-
gress the right to make a rule of evidence and prescribe
procedure for the State courts in conflict with the pre-
viously recognized rights of the defendant; a power
which has been repeatedly denied to Congress.—*Latham
v. Smith,* 46 Ill. 29; *Sporer v. Eiffer,* 1 Heiskell (Tenn.)
638; *Davis v. Richardson,* 45 Mass. 544.

The 8th count of the complaint alleges no fact showing any relation between the failure of the defendant to equip its cars with automatic couplers and the death of appellee's intestate; no causal connection is shown. *L. & N. R. R. Co. v. Stutts,* 105 Ala. 368.

The court sustained the motion to strike the 7th (a), 8th (a) and 9th (a) pleas, filed on the 18th of February, 1902, to the 7th and 8th counts of the complaint jointly, so far as they are filed to the 8th count, and also the 8th (b) and 9th (b) pleas, filed the same date, as they are filed to the 8th count of the complaint, on the ground that they set up the defense of assumed risk, while the act of Congress takes away this defense in cases where the injury is caused by the failure of defendant to equip its cars with automatic couplers. The argument in support of this assignment of error has already been presented. The pleas succinctly and correctly present facts which, if proven, constitute a complete defense to all the counts of the complaint to which they were pleaded.—*B. R. & E. Co. v. Allen,* 99 Ala. 359; *L. & N. R. R. Co. v. Stutts,* 105 Ala. 368. The defect alleged, the absence of automatic couplers on the cars, was an open, known and obvious fact, and the intestate of appellee assumed the risk, and this would be the case although the danger was the result of defective appliances.—*H. A. & B. R. R. Co. v. Walters,* 91 Ala. 442; *T. W. & W. Ry. Co. v. Asbury,* 84 Ill. 340.

Standing on the inside of a curved track while coupling cars is negligence *per se.*—*Tuttle v. Milwaukee Ry. Co.,* 122 U. S. 195; 7 Amer. & Eng. Ency. of Law (2d ed.) p. 1069. If a party selects a dangerous way to perform a duty when there is a safe way, knowing the way selected is dangerous, or if the danger is *obvious or apparent,* he is guilty of contributory negligence.—*M. & O. R. R. Co. v. George,* 94 Ala. 200. The fact that it was customary to perform the service in the way undertaken will not excuse the contributory negligence of the employe.—*George v. M. & O. R. R. Co.* 109 Ala. 246.

The testimony of the witness Herron, that "the negro made the coupling between the train and the caboose ahead of the coach from the inside of the coach," was

[Mobile, Jackson & Kansas City R. R. Co. v. Bromberg, Admr. &c.]

clearly irrelevant and incompetent. The fact that an other employe had been guilty of gross negligence in discharging his duty could not excuse or justify a similar neglect on the part of appellee's intestate.—*Warden v. L. & N. R. R. Co.*, 94 Ala. 285.

GREGORY L. & H. T. SMITH and CHAS. L. BROMBERG, JR., *contra.*—It is not necessary in bringing suit under the Federal statute, to allege that at the moment of the injury the cars are actually moving freight or passengers in the transportation of interstate commerce. Each count of the complaint alleges that the cars were, at the time of the injury, being made up into a train for the purpose of moving interstate traffic, and that one or the other of the cars, or both, were used by the defendant for the purpose of moving interstate traffic. That the railroads of the country are required by the Federal statute in question to equip their cars which are used in interstate commerce with automatic couplers, and that they are liable for injuries occurring by reason of their failure to do so, irrespective of whether the injury is done while the train is actually moving in interstate commerce, or while being made up preparatory thereto, seems to be plain from the statute itself, as well as thoroughly settled by the decisions of the courts. The language of the second section of the act of Congress is that "It shall be unlawful for any such common carrier to haul, or permit to be hauled, or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically, by impact, and which can be coupled without the necessity of a man going in between the ends of the cars." It will be observed that this is not only a provision against using such cars in moving interstate traffic, but a provision against permitting such cars which are used in interstate traffic from being hauled or used on the line for any purpose whatsoever. This identical point seems to have been settled in the case of *Voelker v. Chicago M. & P. Ry. Co.*, 116 F. 873.

A recovery can be had under Section 27 of the Code of 1896 against an employer for the death of an em-

ployee.  There is nothing in the statute whatever which can distinguish between a right of recovery for an injury to a stranger and a right of recovery for an injury to an employee.  In both cases, the right of the administrator must depend upon the right of the deceased, had he lived.  In the case of *Smith v. Sullivan,* 59 Ala. 279, the court thus construed Section 27 of the Code of 1896: "This statute contains no qualifying clause limiting its remedial provisions to any class or classes of persons, or excluding any class from its wholesome terms.  It employs the word 'person' in its broadest sense, and it would seem that every living being falling within that designation may take shelter under its protecting wing."  This case was re-affirmed and this doctrine reiterated in the cases of *E. T. V. & G. R. R. v. Kling,* 81 Ala. 83; *Richmond & Danville v. Greenland,* 97 Ala. 292.  This section was made the basis of an action against a master by an administrator for the death of an employe in the case of *Eureka Company v. Bass,* 81 Ala. 212; and again in *Dantzler v. Debardeleben Coal & Iron Co.,* 101 Ala. 311.

The contention made by the appellant to the effect that no recovery can be had under this state statute, if the negligence consisted in a violation of a duty imposed by a Federal statute, seems to us wholly without merit.  This precise question arose in Alabama in the case of *Grays Admr. v. Mobile Trading Co.,* 55 Ala. 407, where certain cotton was lost by reason of the failure of the Mobile Trading Company to recover it while in transportation, in accordance with the act of Congress requiring the use of tarpaulins, etc., and in this case the Supreme Court of Alabama said: "If there be a failure to perform a duty enjoined by statute, and any one suffers an injury which would not have resulted had the statutory duty been performed, non-performance is negligence giving the right of action to any party injured," and the recovery was permitted in the state court for the negligence arising out of a violation of Federal statute.  This identical point was settled in *Carrie Loughin v. James McCaulley,* 186 Pa. 517 (Sec. 48 L. R. A., p. 33); *Carroll v. Staten Island R. R. Co.,* 58 N. Y. 128;

[Mobile, Jackson & Kansas City R. R. Co. v. Bromberg, Admr. &c.]

*Boys v. Nebraska,* 143 U S. 145; *Van Norden v. Robinson,* 45 Hun. 567.

Each of the pleas stricken out sets up purely and simply that the decedent remained in the service of the defendant company, with knowledge of its failure to comply with the act of Congress, and thereby assumed the risk incident to the defendant's failure to equip its cars in accordance with the act of Congress. The manifest legislative purpose was to protect the servant by positive law, because he had not previously shown himself capable of protecting himself by contract; and it would entirely defeat this purpose thus to permit the servant thus to "contract the master out" of the statute.—*Mawamore v. Cleveland, C. C. & St. L. Ry. Co.,* 96 Fed. Rep. 302; see also *Pullman Pal. C. Co., v. Laac,* 32 N. E. 285. This court has recognized that a principle of an assumption of risk is that of an implied contract.—*Eureka Co. v. Bass,* 81 Ala. 212 (top of page); *Mobile & B. Ry. Co. v. Holborn* (middle of page) 84 Ala. 137.

The 8th count of the complaint was not insufficient, because it did not allege the *quo modo* by which the failure of the defendant to equip its cars as required by the act of Congress resulted in the death of the intestate, but the duty being shown it was unnecessary to allege the *quo modo* by which the negligence caused the injury. *Armstrong v. Montgomery St. Ry. Co.,* 123 Ala. 244; *Ga. Pac. Ry. Co. v. Davis,* 92 Ala. 307; *L. & N. R. R. Co. v. Marbury L. Co.,* 28 So. Rep. 38; *So. Ry. Co. v. Bryan,* 28 So. Rep. 445; *Highland Ave. & B. R. R. Co. v. Miller,* 120 Ala. 535.

The plea No. 2 (b) which was in words and figures as follows: "The defendant says that the negligence of the plaintiff's intestate proximately contributed to said injuries, as alleged in said counts." Plea was bad upon demurrer.—*L. & N. R. R. Co. v. Markee,* 103 Ala. 164; *Tenn. Coal, Iron & R. R. Co. v. Herndon,* 100 Ala. 451. The defense sought to be introduced by the defendant by special pleas, that the plaintiff adopted the most dangerous method of making the coupling, was not sufficiently presented. The pleas did not aver that he could have otherwise performed the service as well and efficiently.

The replication to these pleas was a complete response thereto. *In the case of the Postal Telegraph Company v. Hulsey,* 115 Ala. 207, it is expressly held that a servant is not the guarantor of the wisdom of his selection, and that all he is bound to do is to exercise reasonable care under all the circumstances. It is not sufficient, as appellant seems to suppose, to set forth the mere fact that the employee would not have been injured had he chosen another way. There must be a safe way, open and apparent.—*Tenn. C. & I. Co. v. Herndon,* 100 Ala. 458. Where the way adopted is reasonably safe and the injury results not from the selection of the way, but from a defect in the machinery, the servant cannot be held to be guilty of contributory negligence or to have assumed the risk.—*R. R. Co. v. Pearson,* 97 Ala. 217. These pleas do not allege that the duty of the plaintiff's intestate could have been performed as well and efficiently in the way suggested as in that adopted, and they are not for that reason defective.—*High. Ave. & Belt R. R. v. Waters,* 94 Ala. 443.

The introduction in evidence of the Federal statute was without prejudice or injury to the defendant. The Supreme Court of Alabama either judicially knows the contents of this act of Congress, or it does not. If its contents are judicially known to the court and jury, then no injury whatever could have been suffered by its introduction in evidence, as it only informed the court and the jury of facts which it already knew without its introduction.—*Mobila Transportation Co. v. City of Mobile,* 128 Ala. 235. The law, however, is that the court does take judicial knowledge of the contents of this act, and it was, therefore, immaterial whether it was introduced in evidence or not.—17 Am. & Eng. Ency. of Law (N. S.), p. 928.

DOWDELL, J.—This is a suit by Charles L. Bromberg, Jr., Admr. etc., against the appellant Railroad Company, to recover damages for the negligent killing of Arthur Robbins, on the 19th day of December, 1900. The deceased was a brakeman, and as such, was at the time of his injury in the employment of the defendant

company, and was killed while in the act of coupling two cars together in the discharge of his duties as brakeman. It is alleged in the complaint that the said Arthur Robbins was killed by being crushed between a caboose and a passenger coach, "which were being made up in a train of the defendant for interstate commerce," and while attempting to couple the two cars together. The alleged negligence of the defendant consisted in a failure on the part of the defendant company to comply with the provisions and requirements of the act of Congress, known as the *Safety Appliance Act,* approved March 2, 1893, C. 196.—*United States Statutes at Large* p. 531, (U. S. Comp. Stats., 1901, p. 3174). The complaint was several times amended, and as finally amended contained eight counts. The first assignment of error relates to the ruling of the court on demurrers to the complaint. This assignment is as follows: "The court below erred in overruling the demurrers of the defendant to the amended complaint, filed by the plaintiff on June 1, 1901, and also in overruling the additional demurrers to amended complaint filed June 4, 1901." The demurrers that are referred to in this assignment, are directed to the 1st, 2d, 3d, 5th and 6th counts of the amended complaint. The orders overruled all of the demurrers, the assignment of error is a joint assignment of all these rulings, and unless there was error in overruling the demurrer to each and every count, the assignment is bad and unavailing. The first three grounds of the demurrer raise the question of the necessity of alleging in the complaint of a suit under the Federal statute, that at the moment of the injury, the cars are actually moving freight or passengers in the transportation of interstate commerce. The fourth ground is the alleged inconsistency in the several counts, in that it is averred in each that the caboose was not in use in moving interstate commerce, while in another part of the count it is averred that the coach and caboose were component parts of a train being made up for the purpose of moving interstate commerce. It is sufficient to say of this last ground of demurrer, that it is without foundation in fact. There is no such allegation in any of the counts

as that the caboose was not used in moving interstate commerce. As to the question raised by the first three grounds, it is to be observed that each count of the complaint alleges that the cars were, at the time of the injury, being made up into a train for the purpose of moving interstate traffic, and that one or the other of the cars, or both, were used by the defendant for that purpose.

The Federal statute above referred to, requires railroads to equip their cars used in interstate commerce with automatic couplers, and for any injury to a person, occurring by reason of their failure to do so they are unquestionably liable. The second section of the act of Congress, provides as follows: "It shall be unlawful for any such common carrier to haul, or permit to·be hauled, or used on its line any car used in moving interstate traffic not equipped with couplers, coupling automatically, by impact, and which can be coupled without the necessity of a man going in between the ends of the cars." It would be a narrow and limited construction of this statute, to say that it was only applicable in cases where the cars at the very moment of the injury are being actually used in moving interstate traffic, and not to cars where the injury occurs in the making up of a train of cars for the purpose of moving interstate traffic. The language employed in the statute, as well as the beneficent purpose for which it was enacted—the preservation of human life, forbids an interpretation so narrow. In *Voelker v. Chicago M. & P. Ry. Co.* (C. C.) 116 F. 873, where the same question was under consideration, it was said: "This statute requiring railroad companies to equip their cars with automatic couplers was not enacted to protect the freight transported therein, but for the protection of the life and limb of the employees who were expected to handle these cars. The beneficent purpose of this statute is defeated if the employees are required to handle cars not equipped as required by the statute, without regard to the question whether the cars are loaded or not. * * * * When companies like the defendant in this case are engaged in interstate traffic, it is their duty under the act of Con-

gress, not to use, in connection with such traffic, cars that are not equipped as required by that act. This duty of proper equipment is obligatory upon the company before it uses the car in connection with interstate traffic, and it is not a duty which only arises when the car happens to be loaded with interstate traffic. * * * Whenever cars are designated for interstate traffic, the company owning or using them is bound to equip them as required by the act of Congress; and when it is shown, as it was in this case, that a railway company is using the car for transportation purposes between two states, sufficient is shown to justify the court in ruling that the act of Congress is applicable to the situation." The construction here given the act of Congress seems reasonable and is in harmony with the evident purpose of the statute. The action of the court below in overruling this demurrer to the amended complaint was free from error, and the assignment of error being general, covering the rulings on the demurrers as a whole, and not based on the rulings severally, must fail. See *Western Railway of Ala. v. Arnett*, 137 Ala. 414, decided at the last term of the court. For like reason the assignment of error numbered "6th" must fail. This assignment is as follows: "6. The court below erred in sustaining the demurrer of plaintiff to plea 2 (b), 3 (b), 4 (b), 5 (b), 6 (b) and 7 (b), to the 7th and 8th counts of the complaint." This is a joint assignment of several rulings, and can avail nothing unless each plea therein mentioned was a good plea to each count of the complaint. The one designated 2 (b), was as follows: "The defendant says that the negligence of the plaintiff's intestate proximately contributed to said injuries, as alleged in said counts." The insufficiency of this plea when tested on demurrer is plain, and palpable under our decisions.—*L. & N. R. R. Co. v. Markee*, 103 Ala. 164; *Tenn. C. I. & R. R. Co. v. Herndon*, 100 Ala. 451. There was no error in the ruling on the demurrer to this plea, and the assignment of error under consideration embraced this ruling. The 8th assignment of error, like the first and sixth, is a joint assignment of several rulings. It assigns as error the overruling of the defendant's demurrer to the

4th, 5th and 7th replications to the defendant's pleas. The averments in the 4th replication, were in substance, that notwithstanding the matters and things alleged in said plea, the plaintiff's intestate, the said Arthur Robbins, could not have performed his duty as brakeman in making said coupling in the manner indicated in said plea, as well and effectively as he could have performed it by going in between the cars on the inside of said curve as he attempted to do. It is not denied in the defendant's plea, but that it was the duty of said Arthur Robbins to make the coupling, but the pleas to which said replication was filed, set up as a defense to the action that there were other and different ways attended with less danger in which the coupling might have been made without going in between the cars as the said Robbins attempted to do, and that he was guilty of negligence which contributed to his injury, in going between the cars to make the coupling, instead of adopting one or other of the modes suggested in the pleas. The theory being that where there are two ways open for the performance of an act or duty, the safer of the two ways— the one attended with the least danger should be adopted. This principle is thus stated in the case of *Highland Avenue & Belt R. R. Co. v. Walters,* 91 Ala. 443: "A corrollary from the rule that an employe is bound to use ordinary care to avoid injury is, that when there are two ways of discharging the duties incident to his employment apparent to the employe—one dangerous and the other safe, or less dangerous—he must select the safe, or less dangerous way. But this rule rests on the hypothesis that he can perform his duties as well and efficiently in one way as the other." The replication to the plea in the case before us rests upon the proposition contained in the last clause of the above quotation, and the facts averred as responsive matter to the plea, brings the replication clearly within the principle there stated. There was no error in overruling the demurrer to this replication.

The overruling of the defendant's demurrer to the complaint and to each count thereof as shown on page thirty-six of the record, constitutes the second assign-

ment of error.  This demurrer which was overruled by the court, was addressed to the complaint as a whole, and to each count of the complaint, and contained three grounds—"First, because said complaint, and each count thereof shows that plaintiff's action is instituted under a statute of Alabama without alleging any act of negligence on the part of the defendant recognized by the laws of the State of Alabama; second, because the act of Congress upon which plaintiff relies to fix negligence upon the defendant has no application to cases in which death ensues as a result of the negligence alleged in said complaint and each count thereof; third, said complaint and each count thereof shows that plaintiff's intestate was in the employ of the defendant at the time of the alleged injury and alleges no fact showing liability of defendant therefor."  The demurrer presents for consideration two questions—First, whether a recovery can be had under Section 27 of the Code of 1896, for an act which is wrongful by reason of a failure to comply with the Federal statute; second, whether a recovery can be had against a master for the death of an employe under said section, resulting by reason of the failure of the master to comply with the requirements of the Federal statute.  We will consider these two propositions in the inverse order of their statement above.  Section 27 of the Code reads as follows: "A personal representative may maintain an action and recover such damages as the jury may assess, for the wrongful act, omission, or negligence of any person or persons, or corporation, his or their servants or agents, whereby the death of his testator was caused, if the testator or intestate could have maintained an action for such wrongful act, omission or negligence, if it had not caused death," etc. The language of the statute is plain, and we think, sufficiently broad enough to embrace within its provisions any person who comes to his death by the wrongful act, omission or negligence of another person, or corporation, irrespective of class, or of the relation existing between the deceased person and the one guilty of the wrongful act, omission, or negligence, causing the death. In the case of *L. & N. R. R. v. Sullivan*, 59 Ala. 279, in

speaking of the act of February 5, 1872,—Pamp. Acts, 83, which act is substantially embraced in section 27 of the Code (1896), it was said: "This statute contains no qualifying clause limiting its remedial provisions to any class or classes of persons, or excluding any class from its wholesome terms. It employs the word "person" in its broadest sense, and it would seem that every living being falling within that designation, may take shelter under its protecting wing." In *Dantzler v. DeBardeleben Coal & Iron Co.*, 101 Ala. 309, a suit by the administrator against the master for the death of an employe, the first count in the complaint was predicated on this statute, and the remaining counts on the statute commonly known as the employer's liability act, Section 1749 of the Code, and the right of action by the administrator against the master for the death of the employe caused by the wrongful act, omission or negligence of the master was not questioned. As suggested by counsel for appellee, it may be there are defenses to an action for the death of a servant which could not avail in a suit for injury to a stranger, such as assumption of risk, or that the injury was caused by the negligent act of a fellow servant, but this is no argument against the right of action under this statute for the death of the servant or employe, as these distinctions go only to the question of whether or not there has been a violation of duty to the deceased person, and, therefore, as to whether the deceased person himself would have had the right to recover, had he lived. They furnish no distinctions as to the character of the parties whose rights will be enforced under this statute, when the case is such that the deceased would have recovered had death not ensued. It is insisted in argument by counsel for appellant, that under the Federal statute in question, no cause of action exists where death results, but only in causes of "injury" to the person. And this upon the theory that the statute should be construed as limiting the right of action to the person injured. The purpose of the statute was as much for the preservation of life as limb. It imposed a duty, and the violation of that duty where injury to person results, is counted for negligence

in an action for damages, as much so as the violation by
the common carrier of any duty in the management and
running of its locomotives and cars imposed by munici-
pal or state laws. The right of action in the appellee
is given by the state statute, Section 27 of the Code, the
ground upon which a right to damages is based, is the
negligent killing of plaintiff's intestate, which negli
gence consisted in the failure of the defendant company
to comply with the requirements of the Federal statute.
Our statute gives the right of action to the personal rep-
resentative for the wrongful act, omission or negligence,
of any person or corporation, causing the death of the
intestate. The Federal statute imposes a duty on the
corporation, and a violation of that duty from which
death results, is an "omission," or "negligence," within
the meaning of our statute. A similar, if not the pre-
cise question, was considered in the case of *Gray's Est.
v. Mobile Trade Co.,* 55 Ala. 387, in a suit for the recov-
ery of damages for the loss of cotton by reason of the
failure of the Trading Company to cover it while in
transportation, in accordance with the act of Congress
requiring the use of tarpaulins, etc. In that case it was
ruled that a failure to comply with the requirements of
the Federal statute was an act of negligence, and for
which the defendant was liable in damages for the in-
jury resulting from it. See also the following cases:
*Carrie Loughin v. McCaulley,* 186 Pa. 517; *Carroll v.
Staten Island R. R.,* 58 N. Y. 128. This, we think, suf-
ficietly disposes of both questions raised by the de-
murrer, and in favor of the ruling of the lower court.

The act of Congress in question, being a regulation of
interstate commerce, and over which Congress has ex-
clusive jurisdiction, its provisions are binding upon the
courts of all the states.—*So. R. R. Co. v. Harrison,* 119
Ala. 539; *Boyd v. Nebraska, etc.,* 143 U. S. 135. Section
8 of the act of Congress is as follows: "That an em-
ploye of such common carrier who may be injured by
the locomotive, car or train in use, contrary to the pro-
visions of this act, shall not be deemed thereby to have
assumed the risk thereby occasioned, although contin-
uing in the employment of such carrier after the unlaw-

ful use of such locomotive, car or train had been brought to his knowledge."—U. S. Comp. Stats. 1901, p. 3176. The language employed in this section plainly precludes the defense of assumed risk, and pleas setting up this defense in an action under this statute, may well be stricken on motion, as being frivolous. There was no error in striking the pleas setting up this defense, as complained of under the third and fifth assignments of error. What we have already said with reference to the ruling of the court on the demurrer to this complaint under the second assignment of error applies to the questions raised under the 4th assignment, which relates to the overruling of the demurrer to the 8th count of the complaint, unless it is that this demurrer raises the question of the insufficiency of the count in alleging the *quo modo* by which the failure of the defendant to equip its cars as required by the act of Congress resulted in the death of the plaintiff's intestate. The duty, however, was shown, and it was unnecessary to allege the *quo modo* by which the negligence caused the injury. *Armstrong v. Montgomery St. Railway Co.*, 123 Ala. 244; *Ga. Pac. R. R. Co. v. Davis*, 92 Ala. 307; *L. & N. R. R. Co. v. Marbury Lumber Co.*, 125 Ala. 237; *Highland Avenue & Belt R. R. v. Miller*, 120 Ala. 535. The seventh assignment of error challenges the ruling of the court in sustaining demurrers to the third plea to the first six counts of the complaint. We need not stop to discuss this assignment, for if there was error, it was error without injury, since there was a general plea in of contributory negligence to the first six counts, as shown by the record, under which opportunity was had of proving any phase of contributory negligence, which could have been presented under a special plea.—*Ala. Gt. So. R. R. v. Davis*, 119 Ala. 582. For the same reason there was no reversible error in sustaining the demurrer to the third plea as amended, filed to the first six counts of the complaint.

On the trial exceptions were reserved to certain rulings of the court in the admission of evidence. The first of these exceptions was to the refusal of the court to exclude a statement by the witness Herron that "a

negro made the coupling between the train and the caboose ahead of the coach from the inside of the curve." This statment was responsive to a question to which no objection was made, and that is sufficient to uphold the ruling of the court. But the evidence was under the issues competent. The contention of the defendant was that there was not space enough on the inside of the curve between the cars, when the cars came together to do the coupling, without the person attempting to do so being crushed to death, and the testimony of some of defendant's witnesses tended to support this contention. The fact that the negro did make the coupling from the inside of the curve, without being crushed was pertinent, and directly contradictory of the tendency of defendant's evidence on this point. The next exception reserved was to the action of the court in overruling defendant's objection to the question asked the witness Herron, "was the curve uniform or not?" The bill of exceptions shows that after the objection was interposed and ruled on, the question was not answered, and counsel then asked, "was it (the curve) uniform or not, so far as could be judged by the eye?" To the question in the last form, and to which answer was made, no objection was made. A number of the exceptions taken were on objection to evidence offered on the issues as they existed at the time, made up under the seventh count of the complaint. These rulings need not be considered, since upon the conclusion of all the evidence in the case, at the request of the defendant the court gave the general charge in its favor on this count. So if there was any error in any of the court's rulings on the introduction of evidence under the 7th count, it was error without injury. This evidence related to the kind and condition of the couplers used on the cars, which the deceased attempted to couple together when he received his injury. The couplers were not the automatic couplers, but were the Miller link and pin couplers, which required the person making the coupling to do so by hand. We are unable to see wherein this evidence could prejudice the defendant, after the 7th count under which it was offered was charged out. The other counts

counted on the failure of the defendant to have automatic couplers as required by the act of Congress, and that the defendant did not have the automatic couplers on the cars which the deceased attempted to couple, was a conceded fact.

The defendant objected to the introduction in evidence by the plaintiff of the act of Congress requiring railroads engaged in interstate commerce to equip their cars with automatic couplers. The courts take judicial knowledge of what this act embraces, and therefore, it was immaterial whether it was introduced in evidence or not.—17 Am. & Eng. Ency. of Law, (2d ed.) p. 928. The defendant moved to exclude all the evidence offered on behalf of the plaintiff on the grounds, (1) That no *prima facie* case had been made out by the evidence; (2) Because the evidence showed without conflict a case of contributory negligence. This motion was overruled, to which ruling the defendant excepted and now assigns the same as error. There was evidence tending to support each count of the complaint, leaving out of consideration the 7th count. The first six counts were substantially the same in their averments, and in legal effect there was no difference, and the 8th count differed only in that it did not undertake fully to describe the manner in which the injury occurred, as was done in the first six counts, the *gravamen* of each count being the violation of the Federal statute requiring railroads engaged in interstate commerce to equip their locomotives and cars with automatic couplers, and the failure of the defendant company to comply with its provisions. That the cars which were being coupled by the plaintiff's intestate at the time he was killed were used in interstate commerce, and were not provided with automatic couplers, and that intestate's death was occasioned by reason of the old-fashioned couplers, which were being used, slipping by one another at the time the cars were brought together for the purpose of being coupled, was without dispute, and was proven by the testimony of the witness Herron. So, clearly, the first ground of the motion to exclude was wholly without merit. The second ground is upon the theory as urged in argument by

counsel for appellant, that the testimony introduced by the plaintiff himself established the truth of the pleas of contributory negligence. Conceding this to be true, then the proper course to pursue, was not by motion to exclude the evidence, but by appropriate instructions to the jury from the court, requested in writing by the defendant. Where the evidence of the plaintiff fails to make a *prima facie* case, the motion to exclude would be proper, and this upon the idea of its immateriality. But to have sustained the motion in the present case, where a *prima facie* case, as alleged in the complaint was shown, upon the theory that the plaintiff's evidence also sustained the defendant's plea of contributory negligence, would have been to take from the jury the right to pass on the credibility of the testimony, which the plaintiff was entitled to have done.—*Smith v. Kaufman,* 100 Ala. 410. There were other objections to the introduction of evidence than those we have heretofore adverted to, and exceptions reserved to the rulings of the court, but it would unduly and unnecessarly extend this opinion to discuss them in detail. We have examined and considered these exceptions, and we do not find that any reversible error was committed.

The court gave several charges requested in writing by the plaintiff. The appellant assigns as error the giving of these several charges jointly in one assignment. Of course, each and every one of these given charges must be bad, to sustain the assignment, in other words, if any one of them was properly given, the assignment of error will avail nothing. The first of these given charges was as follows: "The court charges the jury that there are eight counts in the complaint, each one being in the nature of a separate suit; and if the plaintiff has proven any of his counts he is entitled to recover, unless the defendant has established some of the defenses pleaded thereto." This charge correctly states the law, and the giving of it was free from error. The next given charge included in the assignment, was as follows: "The court charges the jury that the burden of proving contributory negligence rests upon the defendant." No fault is to be found in this charge,

and the giving of it was likewise free from error. It follows, therefore, that the assignment being bad, as to these charges, must fail altogether. The assignment of error as to charges refused to the defendant was also joint, and, for the same reason stated above, unless all of the charges included in the assignment should have been given, the assignment is unavailing. The first one of the refused charges, was the general affirmative charge to find for the defendant. This charge can never be given when there is a material conflict in the evidence, or when the evidence is such as to afford reasonable inference of the existence of any facts or fact unfavorable to a right of recovery by the party asking it. Without undertaking to rehearse the testimony in the case, it is sufficient to say that the evidence was not free from conflict, and unquestionably afforded reasonable inference to be drawn by the jury unfavorable to the right of the defendant to a verdict in its favor. There was error in the refusal of the charge, and it follows that this assignment being joint, like the other one, must fail.

Remarks of counsel for plaintiff made in argument before the jury, and to which objection was made and exceptions reserved to the court's ruling on the objection, while not to be commended, were not such as should work a reversal of the cause for the refusal of the trial court to arrest the same. The remarks objected to did not infringe the rule laid down by this court in the case of *Cross v. State,* 68 Ala. 476, 484, where it is said that, "The statement must be made *as of fact;* the fact stated must be unsupported by any evidence, must be pertinent to the issue, or its natural tendency must be to influence the finding of the jury, or the case is not brought within the influence of this rule."

We have not followed counsel in a consideration of some propositions discussed in briefs, for the reason that the state of the record, and the disposition of a number of assignments of error by us, rendered it unnecessary to a final conclusion of the case. We find no reversible error, and the judgment will be affirmed.

Affirmed.