(33 South. 190.)

No. 13,958.

STRINGFELLOW v. GRUNEWALD et al.*

(Nov. 17, 1902.)

ACTION AGAINST INNKEEPER — INJURY TO GUEST—EVIDENCE.

1. This case involves only questions of fact.
(Syllabus by the Court.)

Appeal from civil district court, parish of Orleans; Fred D. King, Judge.

Action by William R. Stringfellow, for the use and benefit of his wife, against Louis Grunewald and Theodore Grunewald. Judgment for defendants, and plaintiff appeals. Affirmed.

Thomas M. Gill and William R. Stringfellow, for appellant. Dinkelspiel & Hart, for appellees.

PROVOSTY, J. The plaintiff, suing as head of the community of acquets and gains existing between himself and his wife, complains that coffee containing a deleterious substance was served to his wife while she was a guest at the hotel of the defendants, in consequence of which she became seriously ill and underwent great suffering, and complains, further, that while his wife was still sick from the effects of the coffee she was so frightened by one of the waiters, who, in a peremptory and insulting manner, demanded of her the surrender of a certain letter

──────────

*Rehearing denied January 5, 1903.

she had in her possession, that she attempted to leave the hotel in search of protection which the officers of the hotel had refused to give her, and, in her excitement and trepidation, stumbled on the stairs, and dislocated and crushed her left arm and shoulder, and also broke her arm near the shoulder, permanently injuring herself, in consequence of which she has suffered and still continues to suffer great pains, and he himself has been put to great expense. Because of the foregoing, and also on account of the mental suffering, mortification, and worry, he claims $20,000 damages.

The testimony is simply overwhelming that the coffee contained nothing deleterious, and that Mrs. Stringfellow was simply suffering from cold and indigestion. The coffee out of the same vessel was drunk by everybody about the hotel that day,—guests and proprietors and employés, and nobody found fault. None but the best coffees are used, and the vessels are porcelain-lined, and are carefully scrubbed every day. Dr. Tebault. the first attending physician, "thought that the sore throat was due to some little cold she may have taken, and the gastric trouble to some little indigestion, accompanied with some fever." He saw her again on the evening of the same day, and says of her case: "I found her condition such that I didn't think any further visits were justified, and I dismissed the case that evening."

After Dr. Tebault, Dr. Brewer was called. He says: "I found Mrs. Stringfellow suffering from fever and exceedingly nervous, which sometimes occurs, you know, with fevers. I simply treated her for that fever, and that was all. According to my idea about the fever, why, it was an ordinary fever that our people have here at that season of the year."

The coffee was drunk on the 10th of July. On the 11th the plaintiff's wife wrote the defendants the following letter:

"New Orleans, La., ——, 189–. Mr. Grunewald—Dear Sir: Will you pardon me for asking if the coffee vessels are copper-lined? We had not a double dose yesterday morn, but a triple one, was quite ill all day & last night. The waiter Jack Hill can tell you the coffee was not right. God grant if anyone is trying to do anything to us, they may meet their fate in their terrible deed is ac-

complished. By answering the above questions, you will greatly oblige, [Signed] Mrs. Stringfellow."

And the defendants wrote in answer the following:

"New Orleans, La., July 11th, 1899. Mrs. Stringfellow, New Orleans, La.—My Dear Madam: In answer to your note just received, I beg to state that our coffee urns are porcelain-lined, and that your fears are perfectly groundless. I am convinced there is no one in the employ of the Grunewald Hotel who bears you any malice, and that your assertions are most absurd. Very respectfully yours, [Signed] Theo. Grunewald, Manager.

"P. S. The waiter, Jack Hill, tells me that at your suggestion he tasted the coffee,—not only tasted it, but drank quite a quantity of it,—and that he experienced no unusual effects."

This last is the letter which the waiter wanted to get back.

During the six or eight months that the plaintiff and his wife had been staying at the defendants' hotel, this waiter, whose name was John or Jack Hill, had always been respectful and polite. He had waited on them sometimes in the dining room, and always when they took their meals in their room. It was he who had served the coffee complained of. On the 19th of July, while in the room of plaintiff's wife, serving her lunch, he, at her request, wrote at the bottom of the Grunewald letter the words, "Not at your request," and signed his name, "John Hill."

Mrs. Stringfellow testifies that Hill wrote and signed the note in the presence of Mr. Louis Grunewald, and that shortly thereafter (about five minutes afterward), she not having yet eaten the luncheon he had brought, he came back to her room and asked her to return the letter; that he was angry and looked entirely different from what he had ever looked when he had served her meals before; that he was excited; that he was furious; that he flourished the napkin he had in his hand, and demanded the letter, and that she, fearing bodily harm, ran out of the room to the elevator, and asked the elevator boy to go and ask the chief clerk, Mr. Saux, to come to her; that she left Hill in her room; also that she said to Hill, "Go to the back elevator and see if you can see Delia [the chambermaid] coming," and this was to get him from the door; that he went towards the back elevator, and she went the other way, towards the front elevator, to call Mr. Saux; that Hill went out of the room first; that Mr. Saux came, and she told him of Hill's having come to her room, and of her being afraid of him, and asked Mr. Saux's protection; that Mr. Saux's reply was, "Mrs. Stringfellow, if you knew that waiter as well as I do, my advice to you is to give him that note;" that she said to him, "Mr. Saux, if you won't give me protection, I will go to the street, where I will get a policeman to protect me;" that Mr. Saux said nothing further; he took the elevator and went down; that she thereupon went to the steps, and, in going down from the fifth to the fourth floor, she, being excited and frightened, slipped on the brasses on the steps, and fell and hurt her shoulder; that she got up without assistance, and asked a bell boy who was near by to come to her room with her until she could write a note to her husband, and that the boy did so; and that she put on a piece of paper, "Come to me at once," and sent the paper to her husband, and he came; that, having this bell boy with her, she felt protected.

The statement of Hill is that while he was in the room of Mrs. Stringfellow, serving her lunch, she requested him to write and sign the statement in question, and that he did so, and that on going downstairs he informed Mr. Grunewald of what he had done, and Mr. Grunewald did not understand what had been written and signed, and told him to go upstairs and ask for the note, and that he did so, saying to Mrs. Stringfellow that he wanted to show the note to Mr. Grunewald; that Mrs. Stringfellow refused to give the note, and he asked her what she was going to do with it, and she answered that she was going to use it for the purpose of a suit against the house; that he then went downstairs and told Mr. Grunewald that he could not get the note, and that Mr. Grunewald was angry; that he did not return to the room of Mrs. Stringfellow, or ask her again for the note; that he probably asked her for the note quickly; that he went upstairs quick and asked her for the note, as he wanted to show it to Mr. Grunewald, because, says he, "I thought, in alluding to this case, I thought perhaps it might be of

some importance. It rather made me flurried;" that his manner towards Mrs. Stringfellow on that occasion was as usual, and as it would be towards any other lady; that Mr. or, Mrs. Stringfellow had always treated him well; and that he was friendly to them.

Mr. Saux testifies that Mrs. Stringfellow sent for him, and he met her at the elevator on the fifth floor; that she said to him, "Mr. Saux, I wish to ask your advice about something," and he said, "Madam, what is it?" and she said, "Jack Hill has signed a paper, and he wishes it back. Would you advise me to return that paper to Jack Hill?" and he stated to her, "Yes; because I know that it was a falsehood. He stated so in my presence;" that Mrs. Stringfellow said she would consult her husband as to whether she should return the paper to Jack Hill or not; that he left her at the elevator and came downstairs; that her mind at the time was perfectly clear and calm; that she did not complain of anything whatever, and made no reference to protection; that when he went downstairs she was going in the direction of her room.

Mr. Louis Grunewald denied positively that he was present when Hill signed the paper, and Hill corroborates him.

The statement of Mr. Theodore Grunewald, one of the defendants, is as follows: "Jack Hill told me that, while he was serving Mrs. Stringfellow her lunch, she requested him to sign a statement—as near as he could remember—to the effect that it was not at her suggestion that he drank this coffee. I asked him, did he remember exactly what he had signed. He said he did not. I told him to go upstairs and ask Mrs. Stringfellow to give him that letter, and to show it to me, and to let me see what he had signed. The man left my office, returned in a few minutes later, and told me that he had requested this paper of Mrs. Stringfellow, and she had refused to give it to him, saying she wanted to give it to her husband. Question. When Jack Hill returned to your office and made that report to you, did you, or not, send him back to demand this letter of Mrs. Stringfellow? Ans. No, sir; I did not."

The chambermaid, Delia Farnan, called as a witness for plaintiff, contradicts Mrs. Stringfellow on one important point. In reading Mrs. Stringfellow's testimony, the question suggests itself, why, if she was so much afraid of Hill in her room, she did not follow Mr. Saux down in the elevator; and that question was asked her, and she answered that she did not because she was in negligé costume. Now, Delia Farnan says that Mrs. Stringfellow was not in negligé, but was dressed. Delia Farnan testifies that she did not see Hill, but met Mrs. Stringfellow at the elevator, and the latter told her she was scared of Jack Hill, who was in her room; and she says that, after making this remark, Mrs. Stringfellow went back to her room. Mrs. Stringfellow's statement is that she sent Hill to call Delia Farnan so as to get him out of the way, and ran in to the front elevator, while he was going to the back elevator; that she sent for Mr. Saux, and, after the interview with Mr. Saux, went to the steps, and met with the accident. She says nothing of having met Delia Farnan, and Delia Farnan says nothing of having seen Mr. Saux. It is questionable whether the testimony of Delia Farnan does not detract from the testimony of Mrs. Stringfellow more than it adds to it.

The decided preponderance of this testimony is against the theory that mental perturbation brought on by the conduct of Hill was the cause of the injury which plaintiff's wife in some way or other unquestionably sustained. On the occasion in question, Hill may have departed somewhat from the respect due to Mrs. Stringfellow, and with which he had theretofore invariably demeaned himself towards her, but his statement offsets hers on the point of there having been anything downright disrespectful. Even taking Mrs. Stringfellow's statement of the circumstances, he was not so "angry" and "violent" and "furious" that he did not promptly comply with her request to go to the back elevator and see if Delia Farnan was coming. Mrs. Stringfellow herself was somewhat to blame for having led him to put himself in a false position towards his employers,—in a position where he may have conceived an altogether disproportionate idea of the importance of the thing she had induced him to do. In obtaining from him the note in question, she had dealt with him, not in his character of a waiter, but in his character of a man and a witness; in the

matter of this note she had, as it were, put herself on a plane with him; and it was as much, if not more, the man and witness who came back to ask for the note, than it was the waiter. By attending to these matters herself, instead of leaving them to her husband, who was at the time with her, she exposed herself to the excited interview with Hill.

We find nothing in the record for which the defendants can be held in damages.

It is, therefore ordered, adjudged, and decreed that the judgment appealed from be affirmed.