# Pantaze *v.* West.

## *Damages for Furnishing Tainted Food.*

(Decided January 14, 1913; Rehearing denied February 4, 1913. 61 South. 42.'

1. *Innkeepers; Injury to Guest; Tainted Food.*—The keeper of a public restaurant is under the duty to use due care to see that the food served his guests is fit and may be eaten without causing sickness on account of its unwholesomeness, and he is liable for any negligence proximately resulting in injury to a guest therefrom.

2. *Same; Jury Question.*—Where the evidence justified the inference that tainted food was furnished the guest causing severe illness, the question of negligence was for the jury, although the restaurant keeper showed that the food was purchased from a reliable dealer, and was properly inspected and apparently in good condition, and also showed facts tending to disprove negligence.

3. *Same; Evidence.*—In an action against a retaurant keeper for furnishing tainted food to guests, it was proper to exclude evidence as to the products and their inspection bought by the innkeeper for use in his restaurant, where it was not reasonably limited to the time or to the article of food involved.

4. *Negligence; Jury Question.*—Negligence resulting from the failure to exercise due care and reasonable precaution, like any other fact, may be inferred from circumstances, and the court should not take the question from the jury, unless as a matter of law no recovery could be had in the case on any view which may properly be taken of the evidence and of the reasonable tendencies afforded by it.

5. *Appeal and Error   Review; Matters Not Shown.*—Instructions are not reviewable where they do not appear in the bill of exceptions, although they are set out in the record proper.

6. *Charge of Court; Misleading; Duty.*—Where a party conceives that a charge is misleading to his prejudice, it is his duty to request an explanatory charge before he can complain.

APPEAL from Birmingham City Court.

Heard before Hon. H. A. SHARPE.

Action by Eugene N. West against Charles D. Pantaze. From a judgment for plaintiff, defendant appeals. Affirmed.

The facts sufficiently appear in the opinion. The following charges were given at the instance of the plaintiff: "(1) If any member of the jury has business or other relations with the defendant, then that juror has no right to be biased by such relations. (2) If the jury are reasonably satisfied from the evidence that any witness willfully swore falsely to any material matter, the jury is authorized to disregard the testimony of such witness altogether. (3) It is the duty of the keeper of a restaurant, offering to serve the public with food for pay, to exercise due care to see that the food is fit and proper for human food, and for the proximately resulting injury, if any, to the customer of a failure to do so, he is liable to a customer paying him for such food and service." There was jury trial and verdict for plaintiff in the sum of $500.

A. LATADY, for appellant. The charge complained of was misleading to the prejudice of defendant.—*Talladega I. Co. v. Peacock*, 67 Ala. 253. The doctrine announced in charge 3 is without application to cases of keepers of restaurants.—*Willoughby v. Sheffer*, 163 Ill. 518; *Wideman v. Keller*, 58 Ill. App. 382. A restaurant keeper is not an absolute insurer and hence, the burden rested on appellee to prove the negligence averred.—Authorities supra. On these authorities it is insisted that the court erred in the admissions and exclusions of evidence.

HARSH, BEDDOW & FITTS, for appellee. The defendant's measure of liability under the authorities may be

thus stated: If the defendant could, by the exercise of due care, have ascertained that the brains were tainted, and failed to do so, he is liable in damages to the plaintiff, if the plaintiff sustained damage as a proximate consequence of such failure to so discover the tainted condition of the brains.—*Bishop v. Weber,* 139 Mass. 411, 52 Am. Rep. 715; *Craft v. Parker Webb Co.,* 21 L. R. A. 139; *Herset v. J. I. Chase Mch. Co.,* 120 Fed. 865; *Norton v. Sewall,* 106 Mass. 143; 8 Am. Rep. 298; *Thomas v. Winchester,* 6 N. Y. (2 Sel.) 397; s. c., 57 Am. Dec. 455; *Hasbrouck v. Armour & Co.,* 23 L. R. A. (N. S.) 877; *Watson v. Augusta Brewing Co.,* 124 Ga. 121; s. c., 110 Am. St. Rep. 157; *Tomlinson v. Armour & Co.,* 19 L. R. A. (N. S.) 923; *Schubert v. Clark Co.,* 15 L. R. A. 818. The liability does not depend on the presence or absence of any warranty, express or implied, but upon a public duty; that is a duty owed the public by one engaged in such business.—*Tomlinson v. Armour & Co.,* 19 L. R. A. (N. S.) 923; *Bark v. Dixon, et al.,* Ann. Cas., 1912 D, 775. If the act of negligence complained of was immediately dangerous to the life or health of another in such instance the party guilty of the negligence is liable to the party injured on principles broader than those arising out of contract, either express or implied.—*Thomas v. Winchester,* 6 N. Y. (2 Sel.) 410. The Code of Alabama, Section 7074, provides: "Any butcher *or other person* who sells, or suffers his apprentice, servant, agent, or other person for him, to sell * * * * any tainted, * * * * or unwholesome fish or flesh, * * * * must, on conviction, be fined, etc." "Failure to observe a duty imposed by positive mandatory statute, is negligence per se."—*Sloss-Sheffield Co. v. Sharpe,* 161 Ala. 435. Where the negligence complained of is the violation of a criminal statute, it is not necessary for the complaint to set

out specially the statute and aver its violation. *It is sufficient if the complaint avers a state of facts which shows a failure on the part of the defendant to comply with the requirements of the Statute.—K. C. M. & B. R. R. Co. v. Flippo,* 138 Ala. 488.

PELHAM, J.—The judgment for the plaintiff from which this appeal is prosecuted was rendered in an action of tort brought to recover damages for injuries alleged to have been caused by the defendant's negligence in selling to the plaintiff spoiled or tainted food, or food unfit for human consumption.

The defendant was the keeper of a public restaurant or cafe in the city of Birmingham, and the plaintiff partook of a midday meal in the establishment, and a few hours thereafter became violently sick; and, attributing the cause to the negligent service to him in this public eating place of improper and unfit food, brought suit for damages against the defendant as the keeper or proprietor of the place.

Appellant insists that the allegation in the plaintiff's complaint that the defendant was negligent in furnishing or serving the food is the essential averment in the cause of action, and that there was no proof of the defendant's negligence and no evidence adduced upon the trial from which it could reasonably be inferred. The evidence set out in the bill of exceptions tending to establish the averment of negligence shows that the plaintiff dined at the defendant's cafe between noon and 1 o'clock in the daytime, and that on this occasion he ate and drank what was served to him; that the articles of food and drink thus furnished were brains and eggs scrambled together, cold boiled ham, bread and butter, and a glass of tea; that prior to this time the plaintiff had not partaken of food of any kind or nature for

[Pantaze v. West.]

some six hours, and he had been perfectly well, and was a strong, healthy, robust, and entirely sober man; that he did not eat anything after dining in the defendant's cafe before he became sick between 2 and 3 o'clock of the afternoon of the same day, when he was taken violently ill and had symptoms of suffering from a severe case of ptomaine poisoning, becoming unconscious for a time, and continuing to suffer from the effects of this illness for months afterward.

The plaintiff's grave illness is not questioned, nor is it seriously contended but that his sickness was reasonably attributable, under the testimony, to the food eaten at the meal provided to the plaintiff as a patron at the defendant's restaurant or cafe on this occasion.

The physician that attended the plaintiff diagnosed the case as one of ptomaine poisoning resulting "most likely" from eating "tainted" brains. This diagnosis was made by the physician from a physical examination made at the time and from a history of the case received from the patient. It was also shown by the evidence that brains of the kind served were of such a nature or composition as to easily spoil or taint and become unwholesome and unfit for food, and cause ptomaine poisoning when taken into the system under such conditions, in consequence of the bacteria developed in decomposition producing a poison. It was further shown that the bacteria poison produced in tainted brains may often be destroyed or rendered harmless by sufficient cooking; that the taint in brains developed by decomposition of the tissues has a peculiar odor, easily detected before cooking; and that any one can readily distinguish it when the decomposition has set in to that extent to render the article dangerous or harmful to be taken into the system as food.

The evidence introduced by the defendant was in effect that the 10-pound package of brains purchased by him from a wholesale dealer was carefully inspected; that the brains were fresh and in first-class condition, with no odor or tainted smell about them, and they were properly and carefully prepared and served; that the package was purchased and delivered early in the morning of the same day that part of them were prepared and served to the plaintiff. There was also other evidence having a tendency to disprove negligence or the want of due care upon the part of the defendant, and to show that neither he nor his servants or employees, for whose acts he was responsible, were negligent in the premises.

The fact was established without controversy that the defendant was the keeper of a public eating place, engaged in the business of serving food to his customers, the public, and, being thus engaged and holding himself out as a public purveyor, he was bound to use due care to see that the foodstuffs served at his place of business to his customers were fit for human consumption and could be partaken of without causing sickness or endangering human life or health because of their unwholesome and deleterious condition; and, for any negligence in this particular in failing to observe this duty which proximately resulted in injury to one of the patrons of the place, the defendant would be responsible —*Craft v. Parker Webb Co.,* 96 Mich. 245, 55 N. W. 812, 21 L. R. A. 139; *Bishop v. Weber,* 139 Mass. 411, 1 N. E. 154, 52 Am. Rep. 715; *Huset v. Case Mch. Co.,* 120 Fed. 865, 57 C. C. A. 237, 61 L. R. A. 303; *Thomas v. Winchester,* 6 N. Y. (2 Selden) 397, 57 Am. Dec. 455; *Watson v. Augusta Brewing Co.,* 124 Ga. 121, 52 S. E. 152, 1 L. R. A. (N. S.) 1178, 110 Am. St. Rep. 157; *Tomlinson v. Armour & Co.,* 75 N. J. Law. 748, 70 Atl.

314, 19 L. R. A. (N. S.) 923; *Shubert v. Clark Co.*, 49 Minn. 331, 51 N. W. 1103, 15 L. R. A. 818, 32 Am. St. Rep. 559; *Stringfellow v. Grunewald*, 109 La. 187, 33 South. 190.

The late case of *Doyle v. Fuerst & Kraemer*, reported in 129 La. 838, 56 South. 906, 40 L. R. A. (N. S.) 480, is a case in point. The plaintiff in that case alleged that he was ptomaine poisoned from having eaten cakes and chocolate with whipped cream at defendant's confectionery establishment, where such refreshments were served to the public, to be consumed on the premises. No direct or specific acts of negligence were proven, and the defendant produced as wtinesses in its behalf its purchasing agent, head baker, and the traders or merchants from whom it purchased the articles used in its business, to show the purchase and use of first-class articles, etc., and to prove an absence of negligence on its part in furnishing or serving improper or unfit edibles. The court in that case said: "The principle which governs in this case is that every one ought to know the qualities, good or bad, of the things which he fabricates in the exercise of the art, craft, or business of which he makes public profession. * * * It is easily possible for the keeper of such a place to know in all cases whether the eggs, milk, and butter he sells, or the articles of food he has made out of them, are fresh and fit for human consumption. He is, therefore, at fault if these articles prove to be vitiated and deleterious. * * * It is common knowledge, to which the keeper of a public eating place must be held, that food in which the process of decomposition has begun is liable to make the person who eats it ill." Excerpts from a wide range of cases are appended to the opinion in support of the court's holding.—See 129 La. 840, 56 South. 907.

Whether or not the defendant or his servants, for whose acts the defendant was responsible, were negligent in failing to use due care in seeing to it that the food served to the plaintiff in the defendant's restaurant or cafe was not tainted or unfit for human conconsumption, under the facts and the tendencies afforded by the evidence in this case, was, we think, for the jury to determine.

In reasoning from the effect produced back to the cause producing it, the case presents the simple proposition wherein it is shown that the plaintiff was rendered sick, and that his illness was probably due to eating tainted brains cooked and served to him by the defendant or his servants at the defendant's public eating place. As a natural corollary to this, the principal controversy is presented in the question of whether or not the defendant or his employees or servants, for whose acts the defendant was responsible, were negligent in not using due care in preparing or serving the food to the plaintiff for consumption. The evidence shows that the harmful effects of taking such food into the system may often be removed by proper cooking, and that before cooking the taint is easily detected by any one, by the peculiar attending odor. The inferences that might easily and reasonably be drawn from this evidence, it seems to us, are that, if the plaintiff was made sick from eating tainted brains, the defendant or his servants, for whose acts the defendant is liable, were negligent either in not using due care in properly cooking the brains or in failing to discover that they were tainted or in an unfit and dangerous condition to cook and serve to patrons for consumption; for it was established by the testimony that the taint was easily and readily detected by any one giving ordinary attention to the matter, and a want or failure to observe this duty and exercise due

care in this regard would constitute that negligence for which the defendant would be held liable. The testimony offered in behalf of the defendant, going to show that the brains were purchased from a reliable dealer as being a first-class article, and were properly inspected and were apparently in good condition, and the other direct and circumstantial evidence having a tendency to disprove negligence as attributable to the defendant, does not alter the situation, as this testimony in behalf of the defendant did not relieve the conflict in the evidence produced by the testimony from which a different inference as to the defendant's negligence might reasonably be drawn, and it then necessarily became a question for the jury to determine, from a consideration of the whole evidence, whether they would believe the tendencies of the evidence going to establish a want of due care, or negligence, on the part of the defendant, or the contrary evidence and its tendencies adduced in behalf of the defendant, to disprove negligence.

It was not for the court to pass upon the conflicting, probable or reasonable inferences to be drawn from the evidence, nor to weigh or balance one inference that could be so drawn against another contra inference deduced from other testimony, and thus determine and pass upon these different and conflicting inferences afforded by the evidence for or against one or the other of the parties to the suit; for this, under our system, is exclusively the province of the jury. And as negligence, and the failure to exercise due care and ordinary caution, like any other fact, may be inferred from circumstances, the court would not have been justified in taking the case from the jury unless, as a matter of law, no recovery could have been had in the case upon any view which could properly have been taken of the evi-

dence and of the reasonable tendencies afforded by it. The rule, as we have stated it, on this proposition, is settled beyond cavil to be the law in this state in quite a large number of well-considered opinions.—*Smoot v. M. & M. Ry. Co.*, 67 Ala. 16.; *Culver, Adm'r, v. A. M. Ry. Co.*, 108 Ala. 330, 18 South. 827; *M. J. & K. C. R. R. Co. v. Bromberg*, 141 Ala. 258, 37 South. 395; *B. R., L. & P. Co. v. Enslen*, 144 Ala. 343, 39 South. 74; *Mc-Cormack Co. v. Lowe*, 151 Ala. 313, 44 South. 47; *Haden v. Troy*, 155 Ala. 270, 46 South. 753; *W. U. Telegraph Co. v. Louisell*, 161 Ala. 231, 50 South. 87; *B. R., L. & P. Co. v. Murphy*, 2 Ala. App. 588, 56 South. 817; *B. R., L. & P. Co. v. Camp*, 2 Ala. App. 649, 57 South. 50; *So. Ry. Co. v. Ellis*, 6 Ala. App. 441, 60 South. 407.

As we view the evidence and the tendencies afforded by it, in the light of the authorities, the court very properly, in our opinion, submitted the question of the defendant's negligence to the jury.

The written charges given at the instance of the plaintiff are not presented by the bill of exceptions, and the fact that they are set out in the record proper does not authorize a review here of the rulings by the court below.—*Choate v. Ala. Great So. Ry. Co.*, 170 Ala. 590, 54 South. 507; *Marsicano v. Phillips*, 6 Ala. App. 229, 60 South. 553, and authorities there cited. The first of these charges belongs to that class, however, which the court may give or may refuse without being put in error.—*C. of G. Ry. Co. v. Hyatt*, 151 Ala. 355, 43 South. 867. If the defendant apprehended that the charge had a prejudicial tendency to mislead, he should have requested an explanatory charge.—*Edmondson v. Anniston City Land Co.*, 128 Ala. 589, 29 South. 596. The second and third charges state correct propositions of law as referred to the evidence.

[Crescent News & Hotel Co. v. Hines.]

The court properly refused to allow questions propounded to the witnesses calling for their general knowledge as to the products and their inspection bought by the defendant for use in his restaurant, but not reasonably limited to the time or to the articles in question involved in the inquiry before the court. The proof offered by this testimony had no logical or necessary connection with the facts in issue, and the questions could only have elicited evidence of facts too remote to the issues before the court to have been admissible as having any proper effect in establishing or disproving any matter involved in the trial. An examination of the evidence set out in the bill of exceptions shows that the court permitted all questions having any logical tendency to elicit evidence to prove or disprove the facts in issue, and we find no error in the court's rulings on the evidence.

The rulings assigned and insisted upon as furnishing grounds for a reversal do not seem to us to disclose error, and the case must be affirmed.

Affirmed.

(Decided January 23, 1913.   Rehearing denied February 4, 1913.
61 South. 9.)