162 So. 564
## COMMONWEALTH LIFE. INS. CO. v. ORR.
6 Div. 612.

Court of Appeals of Alabama.
June 11, 1935.

Rehearing Denied June 28, 1935.

Stokely, Scrivner, Dominick & Smith, of Birmingham, for appellant.

H. M. Abercrombie and Jarrett Abercrombie, both of Birmingham, for appellee.

BRICKEN, Presiding Judge.

This suit was by appellee against appellant on a policy of insurance issued by appellant upon the life of Bealon H. Orr, the minor son of appellant, and plaintiff was named as beneficiary in said policy. .The amount sued for was $320, with interest, which was alleged to be due the plaintiff on said insurance policy.

Issue was joined between the parties, and the jury returned a verdict in favor of plaintiff assessing her damages at $369.20; judgment was accordingly pronounced and entered, from which this appeal was taken.

Among other provisions, the policy sued upon contained the following: "1. Payment of premium.—All premiums are payable in advance at the Home Office of the Company in Louisville, Kentucky, but may be paid to an authorized representative of the company; but no payment will be recognized by the company unless entered at the time in the premium receipt book of this policy. 2. Grace period.—Should the death of the insured occur while any premium is in arrears not exceeding four weeks, the company will nevertheless pay the policy subject to its conditions."

It was without dispute that Bealon H. Orr, the insured, died on August 15, 1928, and that his death was reported to the insurance company. It was contended by the plaintiff that she paid the insurance company, defendant, premiums to the amount of $3.20, which, if so paid by her, fixed liability upon the defendant under the grace period of the policy, above quoted.

It was contended by the defendant that the sum of money paid as premiums on the policy amounted to only $2.80. If the contention of the insurance company was true, the policy, at the time of the death of the insured, had lapsed because of non-payment of premiums and the company, therefore, is not liable to the beneficiary under said policy.

The sole question submitted to the jury in the court below, in so far as this appeal is concerned, was as to whether the sum of money paid as premiums on the policy was $3.20, as contended by the plaintiff, or $2.80, as contended by the defendant. The jury, as stated, found in favor of the plaintiff, and the defendant filed its motion for a new trial upon the ground, among others, that the verdict and judgment were contrary to the great weight and preponderance of the evidence in the case. The trial court overruled and denied the motion for a new trial, to which action an exception was duly reserved, and this action of the court is made the one point of error upon which appellant now seeks a reversal.

Shortly after the death of the insured the plaintiff wrote the company a letter, dated February 8, 1929, in which, among other things, she stated: "On December 26th, 1927, I took out this policy on the life of Bealon H. Orr, and at the time of delivery of this policy by your agent I paid him $1.50 which paid same up until April 2nd. On April 3rd, I paid the amount of $1.30 to agent, Mr. Morris, and in crediting receipt book he marked same showing paid until August 2nd."

Plaintiff testified in her own behalf. On her cross-examination she stated that she made three payments on the premiums on the policy sued upon. The first payment was in the sum of 50 cents on the date the application for the insurance was made. The second payment of premium was in the sum of $1 on the date the policy was delivered, and according to her testimony, the third payment of premiums was in the sum of $1.70, which was paid to Mr. V. Morris, agent of the company, all of which premiums, as contended by her, she claimed was shown by the premium receipt book of said policy.

As to the payment of $1.70, she testified that she was to pay premiums for three months at a time, or four months at a time; that she told Morris, the agent, "I will pay you $1.30, that will pay for three months," and that she wrote her check for this amount and delivered it to Morris, and that he (Morris) then said to her, "Mrs. Orr, since you are not here very much, and you are hard to catch, if you will pay it for another month that will pay it up to the 6th of August." Plaintiff further testified that in reply to Morris' statement she said, "All right," and that she then paid him 40 cents in money, which sum she happened to have in change in her pocket, instead of writing another check for $1.70. Thus it appears from the testimony of plaintiff that the amount of premiums paid by her to Morris was $1.70, which added to the $1.50 paid to Stewart makes $3.20 in premiums which she plainly and clearly declared in her oral testimony to the jury she had paid the insurance company upon the policy of insurance sued upon. It is true that this statement of the witness, from the witness stand, as to the amount of her last payment of premiums, is at variance with the statement contained in her letter that she paid on that occasion $1.30. The statement in her letter that she made *two* payments of premiums is at variance with her oral testimony that she made *three* payments. In one instance she says: "I paid to him $1.50 which paid

same up until April 2nd. On April 3rd I paid the amount of $1.30 to agent, Morris, and in crediting receipt book he marked same showing paid until August 2nd." In the other instance she says: "I paid 50 cents on the date the application for insurance was made. The second payment of premiums was in the sum of $1.00, when the policy was delivered, and the third payment of premiums was in the sum of $1.70 paid to Agent Morris." The fact that three separate and distinct payments of premiums were made is corroborated by the entries in the premium receipt book, while the statement contained in the letter that she made two payments of premiums is not only shown to be inaccurate by the entries made in the premium receipt book, but the same is shown to be incorrect by her testimony delivered from the witness stand. The fact that she only paid $1.30 in premiums on April 3d is not clearly and conclusively shown by the entries made in the premium receipt book because that entry at the foot of the page, as shown by the photostatic copy in the record, is, "10–2–28," meaning according to the unexplained entry a payment of 10 cents due on August 2, 1928. According to the testimony of Agent Morris on cross-examination, he made thirteen entries on the premium receipt book, five of which he testified "are incorrect or are errors." One of the errors is the last entry, which according to his testimony should have shown payment through the week beginning July 2, 1928, instead of August 2, 1928, as the same appears, and which entry would have been correct if Mrs. Orr paid $1.70 in premiums to Agent Morris, as testified to by her. That the amount paid by plaintiff as premiums on the insurance policy was a question for the jury to determine, under the evidence, is too plain for sincere question. The appellant in its brief, filed by able and learned counsel, admits that there was a conflict in the evidence which made the question to be decided one for the jury. The trial court, therefore, properly submitted the determination of that issue to the jury. The jury were the judges of the sufficiency of the evidence and of what the conflicting statements of witnesses tended to prove and establish.

On this appeal this court is urged to set aside the verdict of the jury that decided the facts in this case, because when this court is requested to reverse the judgment of the lower court on account of the refusal of said court to grant a new trial, then this court is requested to pass upon the credibility of the witnesses who testified in the court below, and of the sufficiency of the evidence upon which the jury returned a verdict for the plaintiff.

In the case of Nashville, Chattanooga & St. Louis Railway v. Crosby, 194 Ala. 338, 70 So. 7, 9, the Supreme Court said: "This court has not all the advantages enjoyed by the jury for determining a controverted fact. Much depends on the demeanor of the witness. The appearance of candor or of evasion, of interest or of disinterestedness, of assurance or of uncertainty, and the degree of intelligence or familiarity manifested, are matters for the consideration of the jury, in determining the weight which should be accorded to oral testimony." The foregoing is appropriate to the case at bar. So also the opinion in Cobb v. Malone, 92 Ala. 630, 9 So. 738. Special attention is directed to that portion of said opinion on pages 633, 634, and 635 of 92 Ala., 9 So. 739, 740.

As has been stated, the question as to whether or not the insurance policy involved in this case had lapsed for nonpayment of premiums was for the determination of the jury, on the evidence adduced upon the trial, under the principles of law, as given in the trial court's oral charge and in the special written charges requested by the defendant and given by the court. We cannot say that this record discloses that the evidence offered by the defendant was so overwhelmingly in its favor as that the trial court would have been justified in saying that the verdict of the jury was wrong and unjust.

We find no reversible error in the judgment of the trial court overruling and denying the motion for a new trial; said judgment must be and is affirmed.

Affirmed.