# Alabama Great Southern Railroad Company *v.* Hamilton, Adm'r.

*Action to recover Damages for Personal Injuries.*

1. *Wanton negligence; when shown; general charge.*—In an action against a railroad company to recover damages for the alleged wanton or willful killing of plaintiff's intestate, the defendant is not entitled to the general affirmative charge, where there was evidence showing that the train which killed the intestate was, at the time, going at a speed of from 25 to 45 miles an hour, on an up-grade, and could have been stopped in a distance of 125 yards; that the engineer discovered the intestate, sitting on the end of one of the cross-ties, more than 200 yards ahead of the engine; that the intestate was then asleep and was killed while he was asleep; that the engineer made no effort to stop the train until the man was struck and killed; and the engineer himself testified that when he saw the man ahead of the engine, he was sitting in a stooped

[Alabama Great Southern Railroad Company v. Hamilton, Adm'r.]

ever position as if he was nodding, and witness could see his head moving backwards and forwards.

2. *Same; knowledge of perilous position; physical disability to leave track; charge.*—One who is so sound asleep· on a railroad track as not to be awakened by the noise of an immediately approaching train is unable, from physical or other disability, to leave his position, and one who knows of such position is chargeable with · knowledge that he is unable to move; and charges asserting a proposition to ·the contrary are unsound.

3. *New trial; review; presumptions.*—There is a *prima facie* presumption in favor of the correctness of ·the judgment of a trial court denying a motion for a, new trial, based on the sufficiency of the evidence to warrant the verdict, and ,it is only when the, record shows that such judgment was plainly erroneous that it will be reversed.

APPEAL from the City Court of Birmingham.

Tried before the Hon. W. W. WILKERSON.

This was an action by Fred D. Hamilton, as administrator of the estate of Alfred Wicks, deceased, to recover damages for the allaged wanton or intentional killing of plaintiff's intestate. . The trial was had on the plea of the general issue. The evidence showed that Wicks was killed by appellant's passenger train, at a point on defendant's track distant from· one-quarter to three-quarters of a mile from Powderly. The train was about ten minutes late and was running at a rate of speed estimated by plaintiff's witnesses at from 25 to 45 miles an hour, and by defendant's witnesses at from 55 to 60 miles an hour. The witnesses disagreed in their statements as to where the engine was when the alarm signals were first sounded, but they were sounded continuously from the time they began until Wicks was struck. The injury occurred on a bright day, about noon, and the track was up grade from. Powderly to the scene of the accident. The evidence of two of plaintiff's witnesses was to the effect that the train was blowing a succession of short blasts from Powderly to the place of the accident—a distance of about a quarter of a· mile; that it did not stop or slacken its speed until after Wicks was hit, but ran past where he was before stop-

ping; one witness saying that it ran 150 yards before it stopped, after striking Wicks. One of said witnesses, Mims, testified that he was in Powderly when the train passed, and from his position there he saw Wicks on the track, or by the side of the track; that he was either lying down, "or was propped up mighty near down," on the engineer's side of the track; that a person sitting on the engine could have seen Wicks from where witness was in Powderly. One Ross, a witness for plaintiff, testified that he had had ten years' experience as an engineer and fireman, and that a passenger train such as caused the injury complained of, running at a rate of speed of 25 to 40 miles an hour, on a steep up-grade, could be stopped in 125 yards, and if running on a level could be stopped in 150 or 200 yards. The railroad track was laid on an embankment' from Powderly to where the injury occurred. Another witness for plaintiff testified that he went to the spot where Wicks was killed and saw blood on the track there; that he saw Wicks after he was killed, and that he was struck on the right side of his head.

The engineer of the train, testifying for the defendant, stated that when he first saw Wicks he was about 75 or 100 yards from the engine; that he was sitting on the end of a cross-tie or between the ties, in a stooping over position, like he was nodding, and witness could see his head move backwards and forwards; that as soon as he saw Wicks he put on the brakes in emergency and blew the alarm whistle, reversed the engine and put on sand; that the effect on the train was to stop it in 150 or 200 yards after striking Wicks, and this was an unusually good stop; that he was looking ahead and the train was properly equippped and the appliances in good working order. The fireman testified that he saw Wicks on the track; that he appeared to be sitting on the end of a cross-tie with his head hanging over the rail, and that, so far as he could see, he did not move from the time he saw him until he was struck. Other evidence for defendant tended to show that after going about 100 yards from Powderly the engineer began blowing the whistle; that after the air brakes were

applied the train ran from sixty to eighty feet before Wicks was struck.

. Defendant requested the following written charges, to the refusal of which separate exceptions were reserved, namely: "(1.) I charge you if you 'believe the evidence, you should find a verdict for the defendant. (2.) I charge you that if you believe the evidence, you must find that the engineer was not guilty of any wilful or wanton negligence. (7.) I charge you that there is no evidence in this case that Wicks was unable from physical or other disability to leave the position of peril occupied by him and thus escape injury. (8.) I charge you that there is no evidence that the engineer knew or had reason to believe that Wicks was unable to leave the position of peril occupied by him, in time to have stopped the train and avoided the injury. (9.) I charge you that there is no evidence that the engineer knew that Wicks was unable to leave his position of peril. (10.) I charge you that there is no evidence that the engineer had reasonable cause to believe that Wicks was unable to leave his position of peril and escape injury." A verdict having been rendered for plaintiff, a motion for a new trial was made, based upon the refusal of the above charges and upon the ground that the verdict was contrary and unsupported by the evidence. This motion was overruled. The defendant appeals.

A. G. & E. D. SMITH and JOHN LONDON, for appellant, cited *So. Ry Co. v. Bush*, 122 Ala. 470; *Central of Ga. Ry. Co. v. Foshee*, 125 Ala. 199; *H. A. & B. R. R. v. Swope*, 115 Ala. 287; *Hubert v. La. W. R. R. Co.*, 29 So. Rep. 239; *Black's Case*, 89 Ala. 313.

BOWMAN, HARSH & BEDDOW, contra, cited *A. G. S. R. R. v. Burgess*, 114 Ala. 600; *Glass v. M. & C. R. R. Co.*, 94 Ala. 591; *C. R. & B. Co. v. Vaughan*, 93 Ala. 210; *Cook v. Central R. R. & B. Co.*, 67 Ala. 541; *Tanner's Case*, 60 Ala. 621.

McCLELLAN, C. J.—There was evidence adduced on the trial upon which it was open to the jury to find that the train which ran against and killed Wicks, plaintiff's intestate, was running from twenty-five to forty-five miles an hour when the engineer discovered him on the track, that a train such as that was, going at that rate of speed on an up-grade such as existed at the place, could be stopped within one hundred and twenty-five yards, that the engineer discovered Wicks when the engine was more than two hundred yards from him, that he was then sitting on the end of a cross-tie or between the ends of cross-ties on the outside of, but leaning over the rail; that he was asleep; that it was apparent to the engineer when he first saw him that he was asleep, the engineer himself testifying that Wicks was sitting "in a stooping over position like he was nodding and witness could see his head move kind of backwards and forwards;" that he was not awakened by the approach of the train or the alarms which the engineer sounded, but continued asleep and was struck and killed while he was asleep; that the engineer made no effort to stop the train when he saw Wicks asleep on the track, nor indeed until he had been struck and killed; and that the train was not stopped until it had gone two hundred yards beyond Wicks' body. We cannot hesitate to declare that these tendencies of the evidence afforded ground for a conclusion on the part of the jury that the engineer recklessly and wantonly and with marked indifference to probable disastrous consequences took the unnecessary chances of Wicks' awakening and extricating himself from his position of imminent and deadly peril or of remaining asleep and going to his death as he did; and that having so gone to his death he was wantonly killed by the defendant as charged in the third count of the complaint. The trial court, therefore, properly refused the affirmative charge requested by the defendant, and also charge two, to the effect that the engineer was "not guilty of any willful or wanton negligence."

A man who is so sound asleep as the noise and alarms of an immediately approaching train does not awaken him is unable to leave the position he may be

in, and one who knows of such condition, has probable cause to know, and it may be inferred does know, that he is unable to move. Charges 8, 9, and 10 were, therefore, properly refused.

Charge 7 requested by defendant was also bad. Profound slumber is a "physical or other disability to leave the position" occupied by the sleeper.

Having in mind the settled rule which wisely accords to the judgment of the trial judge denying a motion for a new trial, the *prima facie* presumption of correctness, and authorizing a reversal of that judgment here only when it is plainly erroneous, we cannot see our way to reversing the ruling on the motion for a new trial in this case.

Affirmed.