# Bingham *v.* Davidson.

## *Action by Broker for Commissions.*

1. *Complaint; what counts may be properly joined in.*—A complaint
   containing two counts, a special count in assumpsit, and the
   other the common count for work and labor done, is not
   subject to a demurrer for a misjoinder of counts.

2. *Demurrers; rulings on, when not raised by a single assignment
   of error.*—Where demurrers are interposed to the counts of
   a complaint separately, and there is only a single assignment
   of error, each count of the complaint must be defective, or
   the assignment will not avail to reverse the judgment of the
   court.

3. *Agent; when entitled to commissions.*—An agent, whose contract
   with his principal is that he shall procure a purchaser for
   certain lands at a stated commission and it contains no stip-

[Bingham v. Davidson.]

ulations as to the ability of the purchaser to be procured to pay for the lands, has complied with his contract and is entitled to his commissions, if he secures a purchaser with whom a contract of sale is made by the owner, upon terms mutually agred upon by such purchaser and the owner, who is the agent's principal.

4. *Same; what substantial compliance with his contract.*—Where an agent under such a contract finds a purchaser and presents him to his principal, and without any unfair practices on the part of any one, the principal accepts him and after agreeing with him on the terms of sale and exchange of property, enters into a contract to that effect with such purchaser, the agent is entitled to his commissions, even if the purchaser did not comply with his contract, nor would a subsequent modification of the contract of sale by the principal and the purchaser have that effect.

5. *Same; duty of principal when proposed purchaser is offered.* When the agent in good faith furnishes a party ready and willing to enter into a contract to buy the property, it is for the principal to decide whether the person presented is acceptable. If he is accepted he becomes a purchaser within the meaning of the contract, and the agent's duties are at an end, and he is entitled to his commission as soon as an enforceable contract of sale is executed, and such contract need not be in the form required to convey the legal title to the real estate embraced therein.

6. *Evidence; when motion for a new trial cannot be used to revise ruling of court on admission of.*—Where no exception is reserved to the ruling of the trial court on the admission of evidence, such failure to reserve an exception at the proper time, cannot be cured by a motion for a new trial, so as to render such ruling revisable on appeal.

7. *Charge; when ruling on will not support assignment of error.* Where the bill of exceptions fails to show that the general charge was requested, no assignment of error can be predicated on the action of the court.

8. *New trial; what necessary to procure reversal of judgment refusing.*—To authorize the reversal of a judgment overruling a motion for a new trial, on the ground that the verdict of the jury was contrary to the evidence, it must appear that there was a palpable failure of evidence to support the finding of the jury.

[Bingham v. Davidson.]

APPEAL from the City Court of Montgomery.

Tried before the Hon. A. D. SAYRE.

This was an action commenced by the appellee against the appellant to recover commissions alleged to be due him as a broker.

The facts are sufficiently stated in the opinion.

REESE & STERNFELD and GORDON MACDONALD, for appellant.—A broker is not entitled to commissions for unsuccessful efforts. The risk of failure, both as to his labors and his expenditures are wholly his, and reward only comes with success.—*Sibbald v. Bethlehem Iron Co.*, 38 Am. Rep. 44; *Waller v. Tinnell*, 101 Mass. 257; *Bir. Land Co. v. Thompson*, 86 Ala. 146. On the evidence the court should have given the affirmative charge for the defendant, and this being so, it erred in not granting the motion for a new trial. The court should have permitted the counsel for appellant to ask the questions set out in the bill of exceptions.

MARKS & SAYRE, *contra.*—The demurrers were properly overruled. When Bingham accepted Thornton as a purchaser, and entered into a contract with him, the commission was earned.—*Bir. Land Co. v. Thompson*, 86 Ala. 146, and authorities cited; *Ward v. Cobb*, 12 Am. St. Rep. 587, and note. The case of *Cook v. Forst*, 116 Ala. 395, is especially applicable to the facts shown in this case. The motion for a new trial was properly overruled, as the issues had been fairly submitted to a jury and decided by them on evidence which was in conflict on material points.

DENSON, J.—The complaint is composed of two counts, the first is a special count for breach of a contract and is clearly in assumpsit. The second, is the common count for work and labor done. There was a demurrer for misjoinder of counts, the court overruled the demurrer. In this ruling there was no error.—*York Mfg. Co. v. Bessemer Mfg. & Storage Co.*, 111 Ala. 332.

There were demurrers interposed to the counts separately, these demurrers were overruled by the court.

[Bingham v. Davidson.]

The assignment of error with reference to this ruling is single; therefore, each count of the complaint must be defective or the error as assigned will not avail to reverse the judgment of the court.—*Mobile J. & K. C. R. Co. v. Bromberg,* 37 South. 395.

Upon examination of the first count of the complaint, we find that the demurrer made to it is met by the averments contained in it, hence the appellant's first assignment of error is unavailing. Moreover, we find that the assignment of error, relating to the ruling of the court below on demurrer to the second count is not insisted upon by the appellant; this count states a substantial cause of action, and we would be warranted in not reviewing the ruling of the court as to this count even if error had been properly assigned.—*Montgomery St. Ry. Co. v. Hastings,* (Ala.) 35 South. 412; *Mitchell v. Gambill,* ((Ala.) 37 South. 402. The case was tried on plea of the general issue.

The plaintiff, Davidson, was a real estate broker in the city of Montgomery, the defendant Bingham owned a plantation located in Elmore county which he desired to sell. The plaintiff contends that the defendant engaged him to procure a purchaser for said plantation and agreed to pay him five hundred dollars if he would do so; that he procured one, J. F. Thornton as purchaser, and brought the defendant and Thornton together in his (plaintiff's) office, on the 1st day of February, 1902, and that there the defendant and Thornton, on that day, entered into a written executory contract of sale and purchase of the plantation, and that he was to be paid the five hundred dollars for his services, if he secured a purchaser, and effected a contract of sale of said land upon the terms of the written contract of February 1st, 1902. And that there was no agreement with defendant that his compensation depended on the fulfillment by Thornton of the terms of the contract, but that it was to be paid if he secured a purchaser acceptable to defendant. The written contract was offered in evidence, and the evidence shows that it was executed by Bingham and Thornton in duplicate. Plaintiff was examined as a

witness in his own behalf, and his evidence supports his contention.

Thornton testified as a witness for plaintiff on direct examination, that he made the contract of February 1st, 1902, with the defendant; that the plaintiff brought about the trade between him and the defendant, and that said contract of February 1st, 1902, was written and signed in plaintiff's office.. That witness had never known defendant until plaintiff introduced them; that he (witness) had carried out the terms of said contract and the deeds to the *"properties"* had been made by both parties; upon cross-examination he testified that he had not finished the Corner and Browder houses; that he had not transferred the lease and rent notes to the Browder house until some time in July, 1902; that he went into possession of defendant's plantation and personal property immediately after said contract was signed; that the deed to the Corner house was made to the defendant on or about July 6th, 1902, and the mortgage for $11,000.00 was made on or about July 6th, 1902, by witness and wife upon said plantation to defendant. The witness swore that the trade had not been closed earlier because his attorney advised him that the title to said plantation was defective. He further testified that he owned no real estate in his own name; that the taxes and insurance on the Browder and Corner house had been paid by him and he carried out the terms of said February contract, except where the terms of the contract were changed subsequent to his execution, by agreement between him and the defendant.

The defendant testified in his own behalf that some time in January, 1902, he agreed with the plaintiff that if he would secure a purchaser and effect a sale of 2,413 acres of land belonging to him (defendant) in Elmore county, for $18,500.00, he would pay plaintiff $500.00 for his services; that plaintiff did secure one, J. F. Thornton as a purchaser with whom the *"preliminary"* agreement as to terms, of February, 1st, 1902, was made by him (defendant). That defendant made every effort to carry out his contract with Thornton; that he placed Thornton in possession of the lands, and also in posses-

sion of about $4,000.00 worth of personal property immediately upon the execution of said agreement. His testimony further tended to show that Thornton refused to carry out any of the terms of said February agreement upon the grounds that defendant's title to the land was not good, and that Thornton refused to deliver back to him the lands and personal property defendant had turned over to him under said contract. Defendant further testified that Thornton was never ready and willing to carry out the terms of the agreement, and that Thornton never had the money to carry out the agreement of February 1st, 1902. He further testified that he repeatedly, during the five months that "this matter" was pending, had the plaintiff to help him effect his sale, and that plaintiff finally declared that he was unable to close the trade and effect the sale as he had done everything he could, and that he, some time in April, 1902, informed plaintiff in person and in writing that witness was going to employ attorneys and close the trade on the best terms possible, or employ them to recover his property back; that plaintiff at that time declared his inability to close the trade and effect the sale; that he did thereupon employ attorneys and close the trade on entirely different terms than those contained in the contract of February 1st, 1902, and that this was in July, 1902.

Defendant on cross examination admitted that the original terms of the February contract were subsequent to its execution, modified by agreement by the parties thereto. He also testified that he was in possession of the city real estate mentioned in said contract, and that Thornton had prior to this suit executed the mortgage mentioned in said agreement as modified by subsequent agreement.

This case is distinguishable from those cases in which it is held that to entitle an agent or broker to recover his commissions, he must aver in his complaint and show by the evidence that he procured a purchaser who was able, ready and willing to comply with the terms and conditions of sale. In the case here, plaintiff's insistence is that, he procured the purchaser and that the purchaser was accepted by the defendant, and that a valid

executory contract of sale was entered into, and that his right to compensation did not depend upon the carrying out of the contract of sale and purchase, by the purchaser. According to this view of the case, as has been seen, the evidence offered by plaintiff tends to show its correctness, all that the plaintiff had to do was, in good faith to furnish a person ready and willing to enter into a contract to buy the property. "It was for defendant then to decide whether the person presented was acceptable. If he accepted him he became a purchaser within the meaning of the contract as insisted upon by plaintiff, and the plaintiff's duties were at an end, and his compensation was earned as soon as an enforceable contract of sale was executed."—*Birmingham Land & Loan Co. v. Thompson,* 86 Ala. 146; *Coleman's Exr. v. Meade, etc.,* 13 Bush, 358; *Ward v. Cobb,* (Mass.) Am. St. Rep. 587.

The contract between plaintiff and defendant, on the plaintiff's version of it, contained no stipulation in respect to the ability of the purchaser to be procured. The plaintiff found Thornton and presented him to the defendant as a purchaser, and without any unfair practices on the part of any one, so far as the record shows, defendant accepted him and after agreeing upon the terms of sale and exchange of property, a contract in writing embracing the terms agreed upon was entered into. The contract entered into between defendant and Thornton was one of sale and exchange of property. True, it was not in the form required to pass the legal title to the real estate, but it gave an equitable right and bound the parties thereto to carry out its provisions, and either of them might have resorted to a court of equity to compel specific performance. The plaintiff, as has been shown, admits that he was to effect a contract of sale with the purchaser, and the defendant testified that the agreement made with the plaintiff, was that plaintiff was to secure a purchaser and effect a sale of 2,413 acres of land at $18,500.00, and for this service he was to pay plaintiff $500.00. This discrepancy in the evidence of plaintiff and defendant as to the contract, would make no difference as to the right of plaintiff to recover, as

the terms of the contract between defendant and Thornton were agreed upon, after they were brought together by plaintiff and the contract of February 1st, 1902, was made; besides, the plaintiff testified that the services he rendered were reasonably worth $500.00.

Defendant's testimony that "repeatedly" during the five months that this matter was pending he had the plaintiff to help him effect his sale, and that plaintiff finally declared he was unable to close the trade and effect the sale as he had done everything he could, would not of itself cut off plaintiff's right to recovery, nor would this result be accomplished by the fact that defendant may have notified plaintiff in writing that he was going to employ attorneys and close the trade on the best terms possible, and that plaintiff at the time of the notification declared his inability to close the trade and effect a sale. This was said and done after the contract of sale heretofore adverted to was executed, after plaintiff, according to his insistence, had complied with his contract, and had earned his compensation.

That he aided the defendant in his efforts to get Thornton to carry out the contract of sale, may have been found by the jury not inconsistent with the contract he testified to between himself and defendant, and his utterances as to not being able to effect the sale, may have been, as they doubtless were, regarded by the jury as referring to the efforts made in getting Thornton to carry out the contract of February 1st, 1902, made between defendant and Thornton, especially so, when plaintiff testified that his compensation did not depend upon Thornton's compliance with the sale contract. Nor would the subsequent modification of the terms of the contract between defendant and Thornton deprive plaintiff of his right to compensation if he had complied with the terms of his contract with defendant.—*Cook Brothers v. Forest et al.* 116 Ala. 395.

These conflicting versions and contentions of the parties were no doubt submitted to the jury by the court under proper oral instructions upon the evidence, and it was the province of the jury to make their own deduc-

[Bingham v. Davidson.]

tions from the evidence in the light of the law as given them by the court.

On cross-examination of the plaintiff, while on the stand as a witness, the defendant's counsel asked him a dozen questions consecutively and the bill of exceptions shews that counsel for plaintiff objected to all of them and the court after counsel for defendant made known to the court that the answers sought to be elicited from the witness were material to the general issue and they would constitute a part of defendant's defense and wou'd be connected, sustained *"said objections."* To this ruling of the court no exception was reserved, but the defendant in his motion for a new trial, after verdict and judgment rendered against him, assigns the ruling of the court as one of the grounds for his motion. "A failure to reserve an exception to the ruling of the trial court at the proper time cannot be cured by a motion made for a new trial, so as to render such ruling reversible on appeal."—*Tobias v. Treist,* 103 Ala. 665; *McClendon v. Bush,* 127 Ala. 470.

The bill of exceptions fails to show that the affirmative charge was requested, hence, the fifth assignment of error is groundless.

To authorize a reversal of a judgment overruling a motion for a new trial, on the ground that the verdict of the jury was contrary to the evidence, it must appear that there was a palpable failure of evidence to support the finding of the jury. We do not find in this case such failure in the evidence.—*Cobb v. Malone,* 92 Ala. 630; *Dillard v. Savage,* 98 Ala. 598; *Jones v. Tucker,* 132 Ala. 305.

From our conclusions with reference to the substantive law of the case, there was no error in overruling the motion for a new trial on the ground that the verdict of the jury was contrary to the law.

We fail to find reversible error in the record upon any of the assignments of error, and the judgment of the city court is affirmed.

Affirmed.

McClellan, C. J., Haralson and Dowdell, J.J., concurring.