**INTERNATIONAL HARVESTER CO. OF AMERICA v. DONALDSON.**

**4 Div. 110.**

Court of Appeals of Alabama.
June 28, 1935.

London, Yancey, Smith & Windham and Al. G. Rives, all of Birmingham, and Millard I. Jackson, of Clayton, for appellant.

Sollie & Sollie, of Ozark, for appellee.

BRICKEN, Presiding Judge.

Appellant brought its action in this case, to recover from appellee the sum of $90 and attorney's fees alleged to be due upon a negotiable promissory note of which said appellant claimed to be the bona fide owner and holder in due course, for value, and before maturity thereof.

Defendant filed his plea of non est factum, among other pleas to the complaint upon which issue was joined.

The trial of the case in the court below appears to have been based entirely upon the plea of the defendant that he did not sign the note sued upon.

No exceptions were reserved to any testimony, nor to the oral charge of the court, and we do not find any special written charges in the record which were requested by the plaintiff in the court below.

The case was submitted to the jury upon the evidence, under the oral charge of the court. . The jury returned a verdict upon the issue of facts in favor of the defendant, and the judgment of the court was pronounced and entered in behalf of the defendant.

The plaintiff, appellant here, filed its motion for a new trial upon the ground, here insisted upon, that the verdict of the jury and the judgment of the court were contrary to the weight of the evidence in the case.

Upon the trial of the case, the evidence disclosed without dispute that Donaldson, appellee, purchased from G. R. Doster, doing business under the firm name and style of Eufaula Tractor & Implement Company, an International truck and that he gave his note, according to the plaintiff, for $540 in payment of the balance of purchase money, and, according to the testimony of plaintiff, he also executed a chattel mortgage conveying said truck to said Eufaula Tractor & Implement Company as security for the payment of said note. According to the testimony for the plaintiff, both the note and mortgage were transferred to International Harvester Company of America, for value, and before maturity thereof.

G. R. Doster, the vendor of said truck, was the sole witness to both the note and the mortgage. With reference to the transaction leading up to the sale of said truck, Doster testified that he sold the truck to B. L. and A. W. Donaldson, together, at the house of A. W. Donaldson in Louisville, Barbour county; that Mr. A. W. Donaldson was sick at the time and was at home sitting around the fire; that a Chevrolet truck was traded in as a part of the purchase money for which an allowance of $283 was allowed; that $212 was paid in cash; and that B. L. Donaldson stated with reference to the balance of purchase money, "I'll give you forty-five dollars a month for twelve

months for that truck and that's the last cent"; that a purchase-money note for $540, divided into twelve monthly installments of $45 per month, and a chattel mortgage on said truck to secure the payment of said note, were accordingly prepared, and that the same was signed by A. W. Donaldson at Eufaula, Ala., when the International truck was delivered by the vendor to him; that he did not remember whether he ever discussed the note with A. W. Donaldson or not. As to this transaction, the following excerpt is taken from the testimony of Mr. Doster upon the trial of the case in the court below: "As to whether I ever had any agreement with A. W. Donaldson whereby he was to pay those installments in 12 monthly installments—in 12 $45.00 installments, I say I don't remember whether he even asked about that or not. I don't remember whether I ever discussed that with A. W. Donaldson. I didn't deliver the truck to Louisville; he came after it. That was the time when he executed the note. I did not write the note out there in my office. My wife made it out, she made out the settlement as she made them all out. She made the note out according to the invoice and I looked it over. I knew its contents. I do not recall any conversation that was had between me and A. W. Donaldson about the note there that day. All he did was come in there and sign the note because he understood the price of it an—No, that is not all he did, he took the car home and swapped tires. I am not mistaken about that; the tire trade was not at Louisville. We couldn't have traded there when the truck was in Eufaula. He brought the tires in on his trade-in. That was when he brought the old truck up there. He had a new set on his truck and didn't want the tires that came on this one because he said they were sorrier than his. Yes, that was so, because he had heavy duty tires and this truck had light duty tires. I am not certain that he drove it up there; I am certain that he came up there in it, because when I saw it it was in my place of business. I do not know Lee Thomas that lives down there."

As to this transaction, B. L. Donaldson testified that the trade-in allowance for the Chevrolet truck was $337.50; that he paid $207 of the purchase money in cash; and that the balance was to be paid in ten monthly installments of $45 each, and there was no agreement that there were to be twelve monthly installments of $45 each. This witness further testified that when the International truck was delivered one Lee Thomas carried the Chevrolet truck to Eufaula and received the International truck and carried it to Louisville and that his brother, A. W. Donaldson, was then sick in bed and remained sick in bed for ten days or two weeks; and that he did not think the signature to the note was the signature of A. W. Donaldson and that was his judgment.

Lee Thomas, a nephew of A. W. Donaldson, testified that he carried the Chevrolet truck to Eufaula; that A. W. Donaldson did not go with him; that he received the International truck and returned to Louisville with it; that when he carried the Chevrolet truck to Eufaula and before the International truck was delivered to him that the tires were taken off of the Chevrolet and put on the International, and that this was done by one Henry Lott, who was then working for the International Harvester Company; that A. W. Donaldson was not there at that time; that he was then at home sick; that A. W. Donaldson on that occasion did not sign any note or paper with Mr. Doster; and that no one was authorized at the time the truck left Louisville to go up there to sign any notes or papers.

Henry Lott, a workman for the International Harvester Company, testified for the defendant, and he testified that he stayed in Eufaula with the Eufaula Implement Company, and that Mr. Doster was there also, and he thought Mr. Doster was employed by the International Harvester Company; that he remembered the transaction where A. W. Donaldson exchanged a Chevrolet truck for a new International truck; that he was employed there at the time and knew Lee Thomas, who came for the International truck; that this was some time in the morning; and that Lee Thomas made known to the witness what truck he came after and that witness did not see Mr. A. W. Donaldson anywhere around the place of business. This witness testified, among other things, as follows: "Yes sir, I saw Lee Thomas when he left there with the International truck, and I saw him when he got there in the Chevrolet. When he got there and when he left there, A. W. Donaldson was not anywhere about there as I seen. No sir, I did not see A. W. Donaldson there at the office anywhere."

The defendant, who testified in his own behalf, denied positively that he executed the note sued on, and he also denied that he executed the mortgage. The sufficiency of his denial was for the jury.

The record in this case shows that this action was begun and the pleas thereto filed in the court below in the latter part of the year 1931. The trial of the case was had on the 15th day of October, 1933. The plaintiff had ample time to prepare itself against the plea of non est factum filed by the defendant. The plaintiff seems to have relied solely upon the testimony of Mr. Doster and of the similarity of the signatures to the note and mortgage to the signature to the plea of non est factum. The trial court and the jury had the benefit of examining the signatures to these instruments. It occurs to us that expert testimony upon the subject of the handwriting in question could have been and should have been procured by the plaintiff.

The power of a court to set aside a verdict is inherent and is essential to prevent irreparable injustice in every case where a verdict is wholly wrong, and is the result of inadvertence, forgetfulness, or intentional or capricious disregard of the testimony or of that bias or prejudice, on the part of juries, which sometimes may occur. In the exercise of this power courts should be careful not to infringe the right of trial by jury, and should bear in mind that it is the exclusive province of a jury to determine the credibility of witnesses to weigh the testimony, and find facts from that testimony. The power of a trial court to set aside a verdict should be exercised, only, when it positively and affirmatively appears that the substantial ends of justice require that a verdict should be set aside and a new trial granted. The foregoing being the principles by which a trial court should be controlled, it is to be observed that these principles apply with much greater force to the exercise of this power by an appellate court. When the presiding judge of a trial court refuses to grant a new trial, the correctness of the verdict is thereby strengthened.

Appellate courts do not have all the advantages enjoyed by a jury for determining a controverted fact. A great deal depends upon the demeanor of a witness—the appearance of candor or evasion, of interest, or of disinterestedness, of assurance, or of uncertainty, of intelligence, or the lack thereof. All of these are matters for the consideration of a jury in determining the weight which should be accorded to oral testimony.

When there is no evidence to support the verdict, it is manifestly the duty of the trial court to grant a new trial; no court, possessed of a proper sense of justice, and of a due regard for fair and impartial administration of the law, can or should allow such a verdict to stand. Where, however, there is evidence on both sides, or when there is some evidence to support the verdict, it should not be set aside, because the verdict does not correspond with the opinion of the court as to the weight of the testimony, or because the verdict appears to be against the mere preponderance of the evidence. It is well established in this state that the decision of a trial court refusing to grant a new trial on the ground of the insufficiency of the evidence, or that the verdict of the jury is contrary to the evidence, will not be reversed unless, after allowing all reasonable presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it is wrong and unjust.

This court has examined the evidence as set out in the bill of exceptions, including the original papers sent up to this court, with care, and after such examination we cannot say that this record discloses that the evidence offered by the plaintiff was so overwhelmingly in its favor as that the trial court would have been authorized and justified in saying that the verdict of the jury in this case was wrong and unjust. Cobb v. Malone, 92 Ala. 630, 9 So. 738; Nashville, C. & St. Louis Railway v. Crosby, 194 Ala. 338, 70 So. 7; Jackson Lumber Co. v. Trammel, 199 Ala. 536, 74 So. 469; Hatfield v. Riley, 199 Ala. 388, 74 So. 380; Dees v. Lindsey Mill Co., 210 Ala. 183, 97 So. 647; Commonwealth Life Ins. Co. v. Orr, ante, p. 496, 162 So. 564.

No reversible error appears in the judgment of the trial court overruling and denying the motion for a new trial. The judgment appealed from will therefore stand affirmed.

Affirmed.