38 So.2d 891

**GREAT ATLANTIC & PACIFIC TEA CO. v. MEEKS.**

6 Div. 677.

Court of Appeals of Alabama.
Jan. 11, 1949.

Rehearing Denied Jan. 25, 1949.

Huey, Welch & Stone, of Bessemer, and Drennen & Drennen, of Birmingham, for appellant.

Lipscomb & Brobston, of Bessemer, for appellee.

CARR, Judge.

This is a suit to recover damages for alleged personal injuries. The cause went to the jury on count one of the complaint as amended and an agreement to plead in short by consent. Judgment was in favor of the plaintiff.

Demurrers to the complaint as amended were overruled. We hold that no error can be predicated on this ruling. Jefferson Dairy Co. v. Williams, 215 Ala. 559, 112 So. 125.

The case of Kirkland v. Great Atlantic & Pacific Tea Co., 233 Ala. 404, 171 So. 735, is not here controlling. In the latter case the Supreme Court had under review a complaint which sought to fix liability on a purveyor of contaminated or unwholesome food which was put on the retail market by the manufacturer in a closed container and later sold to the consumer in the original package.

A fair and accurate delineation of the tendencies of the evidence in the case at bar is found in appellant's brief:

"On or about June 15, 1947, Plaintiff's father purchased a red snapper fish from the defendant's store located on 19th Street between 4th and 5th Avenue, in Bessemer, Alabama. The fish was purchased between four and five o'clock in the afternoon of Saturday, June 15, 1947. The fish was displayed by defendant in a refrigerated glass show case and plaintiff's father, Jim Meeks, did not select the particular fish but told the clerk how much he wanted. The mother of the plaintiff, who was also present when the fish was purchased, had the clerk cut off the head and tail of the fish, clean it, and scale it. The fish was cut up into small pieces about 3 inches in size. After this the fish was wrapped up securely and a little tape put on the wrapper. Plaintiff's father then carried the fish on to his house and put it in the refrigerator. At around 11:30 o'clock the next morning plaintiff's mother removed the fish from the refrigerator, washed it, mealed it and put it in hot grease. Her testimony is that she cooked the fish, that is, fried it in deep hot boiling grease for thirty or forty minutes; that the fish was thoroughly browned when she finished. Plaintiff's father, Jim Meeks, testified that the fish was fried in hot grease from about 11:30 to 12:30 o'clock. After the fish was cooked it was put on the table for dinner. Plaintiff and his wife, who do not live in the same household with Jim Meeks, were visiting the Jim Meeks' on this occasion and were having dinner with them. Plaintiff was not present when the fish was purchased and was not present when the same was being cooked. While eating his piece of fish and when he cut into the backbone he discovered a wad of maggots inside the backbone. Later he discovered maggots in the meat of the fish. He became sick at his stomach, vomited and could not sleep well that night.

"Defendant's evidence consisted of the testimony of James H. Fite, Health Inspector of the Jefferson County Board of Health. He testified that he had had considerable experience and training in the control of flies and insects. A maggot is the commonly known term for larva, which is the first stage in the development of an insect, and a maggot looks like a worm. Exposure to heat of 150 degrees will kill all insects, including insects in the maggot stage, and, in the opinion of Mr. Fite, an insect in the maggot stage is easier to kill than in a later stage. This witness further testified that the cooking temperature for frying in deep fat was 300 to 400 degrees and that it would not be possible for a maggot to survive inside of small pieces of fish cooked in deep fat for thirty to forty minutes to an hour and thoroughly done and thoroughly browned. The witness testified that over 150 degrees of heat would instantly kill insects and that if a maggot were exposed to heat sufficient to thoroughly cook a fish the maggot would die. Witness stated if there were any maggots inside of a fish which was cooked in deep fat for thirty or forty minutes the maggots would be killed."

Two prime questions are presented for our review. (1) The denial of the general affirmative charge to appellant. (2) The

action of the court below in overruling appellant's motion for a new trial.

The rule to which our courts adhere in cases of instant concern is clearly stated and fully discussed in McCarley v. Wood Drugs, Inc., 228 Ala. 226, 153 So. 446, 447. In consonance with this doctrine appellant insists that the appellee failed to carry his burden by satisfactory or sufficient proof of any negligence on the part of the former's agents, servants or employees.

In this aspect it is particularly urged that there are no facts or circumstances from which a reasonable inference might be drawn that said agents, etc., even by the exercise of the required degree of care, could have discovered that the purchased fish was infected with maggots. To sustain this position much emphasis is placed on the holding in McCarley v. Wood Drugs, Inc., supra.

It is clear that the facts there disclosed place the case upon an entirely different factual basis from the case at bar. It appears in the former case that plaintiff sought recovery primarily upon proof that she was made sick in consequence of the consumption of the food.

In the case at bar, if the jury concluded that maggots were in fact in the fish when it was purchased by appellant's parents, this would have authorized a fair inference that such condition was incident to lack of due care in the matter of protecting the food from access to flies. The jury from their experience and common knowledge could have found that conditions of this kind do not happen except in consequence and as a result of negligence.

█ As Chief Justice Gardner pointed out in the McCarley case, supra, "Negligence may be inferred from circumstances."

The case of Great Atlantic & Pacific Tea Co. et al. v. Crabtree was reviewed by the Supreme Court and is reported in 230 Ala. 443, 161 So. 508. After retrial in the lower court an appeal followed to this court, 27 Ala.App. 457, 173 So. 894.

For a better understanding of the facts, we have read the original records in these cases. It appears, according to the evidence introduced in plaintiff's behalf, that his wife purchased a piece of bacon from the defendant. When the purchasers reached home, or soon thereafter, a part of the meat was sliced and prepared for the supper meal. After eating some of the cooked portion, the plaintiff became ill. That part which remained uncooked was found to contain "skippers." The evidence disclosed that the part purchased was cut from a larger piece which was lying on top of the market counter.

On the basis of this proof the Supreme Court held that a jury question was posed. When the case reached this court, we followed the mandates of this authority and affirmed a judgment of the court below in favor of the plaintiff. 27 Ala.App. 457, 173 So. 894.

█ It is apparent that a further discussion of the matter is not necessary. We hold that the affirmative charge was not due the appellant. McMillan v. Aiken, 205 Ala. 35, 88 So. 135.

Frankly, we encounter some difficulty in making a decision on the question relating to the motion for a new trial. We find ourselves amazed and astonished that live maggots could be found in food that had been subjected to the indicated cooking process. Yet, amid our perplexity, we are confronted with a record that contains the testimony of four unimpeached witnesses, each of whom deposed that live maggots were so observed. The only evidence we have which could tend to show a contrary state of facts is the testimony of an expert, as indicated hereinabove.

Appellate review of questions of present concern is governed and guided by well defined rules. A very comprehensive pronouncement of these doctrines is to be found in the opinion of the oft cited case of Cobb v. Malone, 92 Ala. 630, 9 So. 738.

The applicable principles have been declared in many opinions which have followed in the wake of judicial decisions.

█ To illustrate some:

"To authorize a reversal of a judgment overruling a motion for a new trial on the ground that the verdict of the jury was contrary to the evidence, it must appear that there was a palpable failure of evi-

dence to support the finding of the jury." Bingham v. Davidson, 141 Ala. 551, 37 So. 738, 740.

"Having in mind the settled rule which wisely accords to the judgment of the trial judge denying a motion for a new trial the prima facie presumption of correctness, and authorizing a reversal of that judgment here only when it is plainly erroneous, we cannot see our way to reversing the ruling on the motion for a new trial in this case." Alabama Great So. R. Co. v. Hamilton, Adm'r, 135 Ala. 343, 33 So. 157, 159.

"The trial court saw and heard the witnesses, as did the jury, and according to the often repeated rule of this court the refusal to grant a new trial will not be disturbed unless, after allowing all reasonable presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince us that it is unjust and wrong." Brotherhood of Locomotive Firemen & Engineers v. Milner, 193 Ala. 68, 69 So. 10, 14.

"There was evidence which, if believed, is sufficient to support the verdict of the jury, and error cannot be affirmed in overruling the motion for a new trial." Morgan-Hill Paving Co. v. Fonville, 224 Ala. 383, 140 So. 575, 578.

"The verdict of the jury and the judgment of the trial court import verity and should be solemnly regarded. The reviewing court should not capriciously disturb them, nor unless a valid, legal reason therefor is made to appear." Wilson v. State, 30 Ala.App. 126, 3 So.2d 136, 139.

"The power of a court to set aside a verdict is inherent and is essential to prevent irreparable injustice in every case where a verdict is wholly wrong, and is the result of inadvertence, forgetfulness, or intentional or capricious disregard of the testimony or of that bias or prejudice, on the part of juries, which sometimes may occur. In the exercise of this power courts should be careful not to infringe the right of trial by jury, and should bear in mind that it is the exclusive province of a jury to determine the credibility of witnesses to weigh the testimony, and find facts from

that testimony. The power of a trial court to set aside a verdict should be exercised, only, when it positively and affirmatively appears that the substantial ends of justice require that a verdict should be set aside and a new trial granted. The foregoing being the principles by which a trial court should be controlled, it is to be observed that these principles apply with much greater force to the exercise of this power by an appellate court. When the presiding judge of a trial court refuses to grant a new trial, the correctness of the verdict is thereby strengthened." International Harvester Co. of America v. Donaldson, 26 Ala.App. 502, 162 So. 566, 569.

See also, Great Atlantic & Pacific Tea Co. v. Crabtree, two cases supra; Alabama Power Co. v. Williams, 229 Ala. 344, 157 So. 58.

In consonance with the above pronouncements and many others that could be quoted, we have come to the considered conclusion that we are not authorized to disturb the judgment of the trial judge in his action in denying the motion for a new trial in the case at bar.

Assignment of error No. 3 is predicated on the refusal of appellant's written charge No. X8. The tendered instruction gives undue prominence and emphasis to only a portion of the evidence. It has the effect of confining the inquiry of negligence vel non within too narrow factual limits, and therefore was invasive of the province of the jury. Pollard v. Williams, 238 Ala. 391, 191 So. 225; Nelson v. Lee, 249 Ala. 549, 32 So.2d 22.

This aside, the record does not disclose whether the charge was requested at the instance of the plaintiff or defendant. It could not, therefore, be considered as a basis for reversal. Sandlin v. State, 25 Ala.App. 311, 146 So. 82; Jackson v. State, 22 Ala.App. 133, 114 So. 68; Gorum v. Mott, 33 Ala.App. 525, 35 So.2d 381.

Assignment of error No. 5, to which we will not respond, is not argued

246

in brief of counsel. Northern Alabama Ry. Co. v. Counts, 166 Ala. 550, 51 So. 938; Rules of Practice in Supreme Court, rule 10, Code 1940, Title 7 Appendix.

The judgment of the court below **is** ordered affirmed.

Affirmed.