THOMPSON, Presiding Judge.
Horace Dale Hogue, Hallie Hogue, La-vona Elliott, Teresa Hogue, Lisa Franklin, Ricky Hogue, and Nicole Franklin, by and through her next friend, Lisa Franklin (hereinafter referred to collectively as “the plaintiffs”), appeal from a summary judgment entered by the Tuscaloosa Circuit Court in favor of Logan’s Roadhouse, Inc. (“Logan’s”). For the reasons set forth herein, we affirm the trial court’s judgment.
The record, considered in the light most favorable to the plaintiffs, see Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala.1990), reveals the following pertinent facts. On the evening of January 14, 2006, a group of approximately 20 people, including the plaintiffs, gathered at a restaurant (“the restaurant”) that, apparently, was owned and operated by Logan’s to celebrate the birthdays of Horace Dale Hogue and Diane Brown. As part of the celebra *1079 tion, appetizers were purchased and shared by many in the group. The individuals of the group also ordered entrées from the menu provided by the restaurant and consumed those entrées. During and shortly after the time that the group departed from the restaurant, the plaintiffs and two other individuals who had been present at the celebration began to experience digestive issues, including vomiting and diarrhea. Ultimately, two of the plaintiffs were required to seek medical treatment because of the digestive issues. There is no evidence indicating that the individuals who became ill following the consumption of food at the restaurant all consumed a common food item, although many of those individuals shared the appetizers that were served at the restaurant.
On December 10, 2007, the plaintiffs filed an action against Logan’s. They alleged that Logan’s had “negligently sold and/or cooked and/or prepared and/or delivered the food consumed by the plaintiffs and/or [had] negligently supervised and/or negligently hired the persons responsible for the cooking and/or preparation and/or delivery of the food consumed by the plaintiffs.” They asserted that, as a result of Logan’s alleged negligence, they had suffered physical injuries and damages. The plaintiffs also asserted a claim of wantonness against Logan’s.[1]
On May 18, 2009, Logan’s filed a motion for a summary judgment. It asserted, among other things, that there was no evidence indicating that it had committed a negligent act. Specifically, it argued that the duty it owed the plaintiffs was to exercise reasonable care in its selection and preparation of the food it served the plaintiffs and that the plaintiffs had failed to present any evidence indicating that it had breached that duty. The plaintiffs filed a response to Logan’s summary-judgment motion. In response to Logan’s argument regarding a lack of evidence of a negligent act on its part, the plaintiffs argued, in effect, that they had sufficiently supported their negligence claim by demonstrating that several people had become ill from eating food served by Logan’s. They also asserted that
“[wjhether a food poisoning claim against a restaurant is based on [the] Alabama Extended Manufacturer Liability Doctrine, breach of warranty[,] or negligence, there is no Alabama decision which supports the conclusion that a person is not entitled to recover in a food poisoning case where there is evidence that the Plaintiffs’ illnesses occurred as a result of being served unwholesome food.”
On August 4, 2009, the trial court granted Logan’s motion and entered a summary judgment against the plaintiffs on both the negligence claim and the wantonness claim. The plaintiffs filed a timely notice of appeal to the supreme court, which transferred the appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975.
The standard by which this court reviews a summary judgment is well settled:
“ ‘ “To grant such a motion, the trial court must determine that the evidence does not create a genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. When the movant makes a prima facie showing that those two conditions are satisfied, the burden shifts to the nonmovant to present ‘substantial evidence’ creat *1080 ing a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); § 12-21-12(d)[,] Ala. Code 1975. Evidence is ‘substantial’ if it is of ‘such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
“ ‘ “In our review of a summary judgment, we apply the same standard as the trial court. Ex parte Lumpkin, 702 So.2d 462, 465 (Ala.1997). Our review is subject to the caveat that we must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala.1990).” ’
“Payton v. Monsanto Co., 801 So.2d 829, 832-33 (Ala.2001) (quoting Ex parte Alfa Mut. Gen. Ins. Co., 742 So.2d 182, 184 (Ala.1999)).”
Maciasz v. Fireman’s Fund Ins. Co., 988 So.2d 991, 994-95 (Ala.2008). We note that the plaintiffs limit their arguments on appeal to their negligence claim; they do not assert that the trial court erred in entering a summary judgment on their wantonness claim. Thus, we do not address the summary judgment as it relates to the plaintiffs’ wantonness claim.
The plaintiffs candidly admit on appeal that they did not present any evidence demonstrating that Logan’s was negligent in the preparation of the food that it served them. They argue, however, that such evidence was unnecessary because, they assert, when several people become sick after consuming food at a restaurant, a jury hearing the claim against the restaurant is permitted to infer that something was wrong with the food the restaurant served from the fact of the illnesses. Relying on Louis Pizitz Dry Goods Co. v. Waldrop, 237 Ala. 208, 186 So. 151 (1939), the plaintiffs appear to argue that a restaurant’s service of food that causes illness, standing alone, constitutes negligence. They also point out the supreme court’s discussion in Flagstar Enterprises, Inc. v. Davis, 709 So.2d 1132 (Ala.1997), relating to the Alabama Extended Manufacturer’s Liability Doctrine (“AEMLD”) in which the supreme court indicates that a claim under the AEMLD is supported by evidence demonstrating that a product is defective when it does not meet the reasonable expectations of the person to whom the product is sold. They argue that, because the food they purchased and consumed at the restaurant made them ill, it did not meet their reasonable expectations, and, therefore, that it was defective. They ai-gue that the trial court erred “in requiring the plaintiffs to show a negligent act on the part of the defendant other than showing that it served tainted food.”
We turn first to the plaintiffs’ assertion of standards applicable to claims asserted pursuant to the AEMLD. The AEMLD is Alabama’s version of products-liability law. Pursuant to the AEMLD, “ ‘a plaintiff must prove he suffered injury or damages to himself or his property by one who sold a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer.... ’” Ex parte Morrison’s Cafeteria of Montgomery, Inc., 431 So.2d 975, 977 (Ala.1983) (quoting Atkins v. American Motors Corp., 335 So.2d 134, 141 (Ala.1976)). “The term ‘defective’ means that the product fails to meet the reasonable safety expectations of an ‘ordinary consumer,’ that is, an objective ‘ordinary consumer,’ possessed of the ordinary knowl *1081 edge common to the community.” Deere & Co. v. Grose, 586 So.2d 196, 198 (Ala.1991).
In their complaint, the plaintiffs asserted only two claims against Logan’s: negligence and wantonness. They did not assert a claim against Logan’s arising under the AEMLD. Thus, we find the AEMLD standards inapplicable to the plaintiffs’ claim before this court on appeal.
We turn now to the plaintiffs’ negligence claim. In McCarley v. Wood Drugs, Inc., 228 Ala. 226, 153 So. 446 (1934), our supreme court discussed at length the proper standard applicable to negligence claims arising from a restaurant’s service of food, the consumption of which causes illness:
“Plaintiffs cause proceeded to trial upon counts 1 and 4, which, as a basis for recovery, rest upon the negligence of defendant in failing to exercise a proper degree of care in the selection and preparation of the food served to her in defendant’s place of business. Such degree of care has been here defined as follows: ‘The law requires that, in the selection of the food for his restaurant and in cooking it for his customers, he shall exercise that same degree of care which a reasonably prudent man, skilled in the art of selecting and preparing food for human consumption, would be expected to exercise in the selection and preparation of food for his own private table. ’ Travis v. Louisville & Nashville R.R. Co., 183 Ala. 415, 62 So. 851, 854 [ (1913) ].
“Our decisions have recognized that in some jurisdictions the doctrine of implied warranty applies (26 C.J. p. 786); but this court has not followed in the wake of these authorities, consistently adhering to the rule of liability resting upon the exercise of due care as above defined. Hooper Cafe Co. v. Henderson, 223 Ala. 579, 137 So. 419 [(1931)]; Greenwood Cafe v. Lovinggood, 197 Ala. 34, 72 So. 354 [ (1916) ]; George’s Restaurant v. Dukes, 216 Ala. 239, 113 So. 53 [ (1927) ]; Louisville & N. R.R. Co. v. Travis, 192 Ala. 453, 68 So. 342 [ (1915) ].[2]
“Forcibly illustrative in this regard was the holding in Travis v. L. & N. R.R. Co., 183 Ala. 415, 62 So. 851, 853 [ (1913) ], to the effect that defendant’s requested charge 18 was properly given, as follows: ‘The defendant is not liable as an insurer of the oysters served to plaintiff, and therefore is not liable if he was made sick by eating them, unless the jury believe from the evidence that defendant was guilty of negligence.’
“And in Hooper Cafe [v.] Henderson, supra, it was noted that the case of Sheffer v. Willoughby, 163 Ill. 518, 45 N.E. 253, 34 L.R.A. 464, 54 Am. St. Rep. 483 [ (1896) ], cited approvingly in Travis v. L. & N. R.R. Co., supra, held, in effect, that proof that plaintiff ate the food, and in consequence became sick, did not make out a prima facie case of negligence, nor shift the burden to defendant, and, this holding was approved, with the concluding observation, that *1082 negligence or breach of duty is not to be presumed.”
228 Ala. at 227, 153 So. at 446-47 (emphasis added). Thus, according to McCarley, evidence that a restaurant served food, the consumption of which caused the plaintiff illness, does not, on its own, give rise to an inference or a presumption that the restaurant was negligent in its preparation of the plaintiffs food. Instead, there must be evidence from which a jury could at least infer that the restaurant failed to act with due care in the preparation of the plaintiffs food.
In McCarley, the supreme court held that evidence of negligence was lacking, despite the fact that the jury was free to infer that the plaintiff had been made ill as a result of consuming food that the defendant restaurant had prepared and served. The court wrote:
“The evidence is not voluminous and has been duly considered by the court in consultation, and we find it was sufficient from which the jury might reasonably infer plaintiffs sickness was in some manner produced by the food served her in her purchased lunch. But this alone will not suffice for the submission of plaintiffs case to the jury. There must be some fact or circumstance from which a reasonable inference may also be drawn that defendant failed in the proper degree of care in the selection or preparation thereof.
“Of course, as insisted by counsel for plaintiff, negligence may be inferred from circumstances (Lawson v. Mobile Electric Co., 204 Ala. 318, 85 So. 257 [ (1920) ]), and direct acts need not be shown, but proof must nevertheless be adduced from which a reasonable inference of negligence may be drawn....
“In the instant case there was no proof of peculiar or unpleasant odor or taste as to the food consumed, nor anything to indicate that it was in any manner improper for human consumption. Plaintiff rests her case upon proof tending to show sickness in consequence of the food consumed. But, as previously stated, this will not suffice for submission of the matter of defendant’s negligence for the jury’s determination.”
228 Ala. at 227-28,153 So. at 447.
Other cases from both the supreme court and the former Alabama Court of Appeals provide further support for the principles set forth in McCarley. For example, in C.C. Hooper Cafe Co. v. Henderson, 223 Ala. 579, 137 So. 419 (1931), our supreme court held that a jury question was presented on a negligence claim arising from a restaurant patron’s consumption of fish prepared and served by the restaurant. The evidence in that case demonstrated that the fish served to the patron did not taste right, had an unpleasant odor, and was discolored. The patron consumed three bites of the fish and shortly thereafter became ill. The court wrote that “[tjhere is evidence that spoiled fish may be readily detected by the senses of sight, touch, and smell,” and it concluded that the plaintiffs evidence established a question of negligence on the part of the defendant restaurant that was subject to resolution by a jury. 223 Ala. at 581,137 So. at 421.
In Pantaze v. West, 7 Ala.App. 599, 61 So. 42 (1913), the plaintiff became ill after eating scrambled eggs and brains. In support of his claim, the plaintiff put on evidence indicating that the brains he had consumed were “tainted,” that the tainted brains were the likely cause of his illness, that the fact that the brains were tainted was easily detectable at the time they were cooked, and that, had the brains been cooked properly, the bacteria causing the taint in the brains would have been destroyed or rendered harmless. The court *1083 of appeals concluded that the trial court had properly submitted the question of the defendant restaurant’s negligence to the jury because
“[t]he inferences that might easily and reasonably be drawn from this evidence ... are that, if the plaintiff was made sick from eating tainted brains, the defendant or his servants, for whose acts the defendant is liable, were negligent either in not using due care in properly cooking the brains or in failing to discover that they were tainted or in an unfit and dangerous condition to cook and serve to patrons for consumption; for it was established by the testimony that the taint was easily and readily detected by any one giving ordinary attention to the matter, and a want or failure to observe this duty and exercise due care in this regard would constitute that negligence for which the defendant would be held liable.”
7 Ala.App. at 606-07, 61 So. at 44 (emphasis added).
Finally, in Great Atlantic & Pacific Tea Co. v. Meeks, 34 Ala.App. 241, 38 So.2d 891 (1949), the former Alabama Court of Appeals considered whether a plaintiffs discovery of maggots in cooked fish he was in the process of consuming sufficiently demonstrated a case of negligence on the part of the seller of the fish. Discussing and resolving the question whether the case was properly submitted to the jury on the issue of negligence, the appellate court wrote:
“In this aspect it is particularly urged that there are no facts or circumstances from which a reasonable inference might be drawn that said agents, etc., even by the exercise of the required degree of care, could have discovered that the purchased fish was infected with maggots. To sustain this position much emphasis is placed on the holding in McCarley v. Wood Drugs, Inc., [228 Ala. 226, 153 So. 446 (1934) ].
“It is clear that the facts there disclosed place the case upon an entirely different factual basis from the case at bar. It appears in the former case that plaintiff sought recovery primarily upon proof that she was made sick in consequence of the consumption of the food.
“In the case at bar, if the jury concluded that maggots were in fact in the fish when it was purchased by appellant’s parents, this would have authorized a fair inference that such condition was incident to lack of due care in the matter of protecting the food from access to flies. The jury from their experience and common knowledge could have found that conditions of this kind do not happen except in consequence and as a result of negligence.”
34 Ala.App. at 244, 38 So.2d at 893 (emphasis added).
In the present case, the plaintiffs have presented evidence demonstrating that they ate at the restaurant and became ill. A jury would be justified in inferring that the cause of their illness was the food they had consumed at the restaurant. However, as stated above, the fact of illness, standing alone, is insufficient to demonstrate negligence on the part of Logan’s. To demonstrate negligence, the plaintiffs were required to have submitted evidence from which a jury could infer a negligent act or failure to act by Logan’s. This they failed to do. For example, unlike in the above-discussed cases, they did not put on evidence indicating that the food was tainted in such a way that the taint could have been discovered by the individuals preparing the food or would have been removed by proper cooking, they did not offer evidence indicating that the food they consumed had a bad taste, odor, or color that could have put the preparer of the food on *1084 notice that the food was spoiled, and they did not offer evidence indicating that the food served to them had been exposed to agents that would cause the food to have become tainted. Thus, the plaintiffs failed to adequately support their negligence claim in the face of Logan’s summary-judgment motion.
We recognize the plaintiffs’ reliance on the supreme court’s decision in Louis Piz-itz Dry Goods Co. v. Waldrop, 237 Ala. 208, 186 So. 151 (1939), in which the supreme court appeared to adopt a res ipsa loquitur approach to questions of negligence arising from illnesses caused by the consumption of food prepared by a restaurant. Close inspection of the relevant facts in that case, however, demonstrate that Waldrop is distinguishable from the present case. In Waldrop, seven patrons became ill after consuming food at a restaurant. The evidence indicated that every one of the patrons had consumed mayonnaise as a part of their meals and that the restaurant itself apparently had made the mayonnaise. Conflicting evidence was adduced at trial regarding the quality of the eggs the restaurant used in making its mayonnaise. The supreme court concluded that the evidence at trial sufficiently supported the jury’s verdict in the plaintiffs favor.
Unlike the plaintiff in Waldrop, the plaintiffs in the present case have adduced no evidence indicating that they were made ill by a single food that every one of them consumed. Likewise, they have put on no evidence indicating that whatever food they did consume that made them sick was “prepared” by Logan’s rather than simply passed on to the plaintiffs in virtually the same condition in which Logan’s received it from its manufacturer. Simply put, without knowing what food made the plaintiffs sick or whether and to what extent Logan’s was involved in its preparation, we cannot rely on the supreme court’s holding in Waldrop to conclude that the plaintiffs’ illnesses, standing alone, constitute substantial evidence indicating that Logan’s was negligent in its preparation and service of the food the plaintiffs consumed.
We also note certain language in Flags-tar Enteiyrises, Inc. v. Davis, supra, that appears to adopt a standard of negligence in a restaurant’s preparation and service of food akin to the doctrine of res ipsa loqui-tur. Specifically, in that case, the supreme court indicated that “[i]t cannot be seriously disputed that the restaurant owed a duty to Davis to exercise reasonable care in the preparation and packaging of her food, i.e., that it had, a duty to sell her merchantable food or food that was not unreasonably dangerous.” 709 So.2d at 1139 (emphasis added). However, after stating that standard, the supreme court discussed the plaintiffs negligence claim in terms of the evidence of actual negligent acts by an employee of the defendant restaurant that breached the standard of care the defendant restaurant owed the plaintiff (i.e., bleeding by the employee from an open sore into the plaintiffs food and failing to recognize that she had done so before packaging the plaintiffs food despite the fact that the blood was obvious in the food). Importantly, the supreme court did not hold that the plaintiff had satisfied her burden of proof simply by showing that the defendant restaurant had served her food that was unmerchantable or unreasonably dangerous. Id. at 1139^11. Indeed, the supreme court quoted at length from its McCarley decision when it discussed the plaintiffs negligence claim, and it specifically rejected the application of the doctrine of res ipsa loquitur in the resolution of the plaintiffs negligence claim against the defendant restaurant. Id. at 1140 n. 4 (“We note that our holding *1085 in this respect is not based on the doctrine of res ipsa loquitur”).
Based on the foregoing, we conclude that the plaintiffs failed to produce evidence indicating that Logan’s breached a duty that it owed to them. As a result, the trial court correctly entered a summary judgment in Logan’s favor on the plaintiffs’ negligence claim, and we affirm that summary judgment.
AFFIRMED.
PITTMAN, BRYAN, THOMAS, and MOORE, JJ., concur.

. The plaintiffs also asserted claims against numerous fictitiously named defendants, but they never subsequently substituted actual parties for those fictitiously named defendants.

. Section 7-2-314(1), Ala.Code 1975, part of Alabama's version of the Uniform Commercial Code, provides:
"Unless excluded or modified (Section 7-2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.”
McCarley was decided well before Alabama's adoption of the Uniform Commercial Code. Regardless, as previously noted, the plaintiffs did not assert a claim against Logan's for breach of the implied warranty of merchantability provided by § 7-2-314(1).